Syllabus.

# COLUMBUS C. SMITH

## v.

## SARAH J. BRITTENHAM.

*Filed at Springfield, March 21, 1881.*

1. FORMER ADJUDICATION—*decision as to parts of case.* Where only two rulings of the circuit court in a case have been reviewed by this court—the denial of a motion to vacate the decree entered, with leave to answer, and an order awarding a writ of assistance—those being the only questions presented by the appeal and passed upon, the defendant will not be barred from having the original and main decree of the circuit court reviewed in this court on writ of error.

2. PRACTICE—*notice of vacating an order of dismissal.* Where a defendant has once been brought into court by service of process, he is bound to take notice of all orders made in the cause; and so where, at the second term, a bill in chancery was dismissed for want of prosecution, and two days afterwards, at the same term, the order of dismissal was set aside, it was *held* that no notice was required to be given to the defendant of the vacating of the order of dismissal and reinstating the cause.

3. CONTRACT—*rescission—offer to return property received necessary.* Before a party can rescind an executed contract for the exchange of lands for goods, on the ground of fraud, he must return or offer to return the goods received by him, unchanged in their condition, and if he has innocently changed that condition while ignorant of the fraud, so that he can not put the other party in as good a position as he was before the trade, he can not rescind.

4. CHANCERY—*sufficiency of bill to rescind purchase on the ground of fraud.* On bill filed to rescind an exchange of land for goods taken of the defendant, on the ground of fraud, where the contract price of the goods was their original cost, not their value, an allegation that a large amount of goods included in the inventory was not delivered to the complainant, but, on the contrary, the value of the goods delivered was $5000 less than the amount of the inventory, it was *held* not to charge that any goods included in the inventory was kept back, under the rule that a pleading is taken most strongly against the pleader.

5. In the same case the bill also alleged in general terms that the defendant made a false and fraudulent inventory of the goods, in which the complainant was cheated of a large amount, without stating in what respect the inventory was false and fraudulent: *Held,* that charges of fraud should not be general, but that the facts should have been stated on which the charges were made.

6. To rescind an executed contract for fraud, there must be damage as well as fraud, and this must clearly appear from the pleadings by the statement of facts. It is not sufficient that the proofs taken by the master may show fraud resulting in damages to the complainant, but the decree must be according to the allegations as well as the proofs.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of DeWitt county; the Hon. LYMAN LACEY, Judge, presiding.

Messrs. TIPTON & RYAN, for the plaintiff in error:

1. The value of the land in controversy is material, and the rule of equity pleadings is that all material facts must be clearly and positively stated. The bill is defective in its frame. The rule in chancery is the same as at law, that every averment necessary to entitle the complainant to relief must be contained in the stating part of the bill, and if every necessary fact be not distinctly and expressly averred, the defect can not be supplied by inference or by reference to other parts of the bill. *Primmer* v. *Patton & Co.* 32 Ill. 528; *Wright* v. *Dame et al.* 22 Pickering, 55. See also *McElwain* v. *Mills,* 9 Wend. 548; *McIntyre* v. *Fuestus,* 6 Paige Ch. R. 239; *Spence* v. *Duren,* 3 Ala. 250; *Daniels* v. *Taggart,* 1 Gill & John. 311; *Edwards* v. *Manny,* 1 Hawks, 359; *Townsend* v. *Heneleron,* 1 Bland, 236; *Hood* v. *Inman,* 4 Johns. Ch. R. 437; *Edwards* v. *Chilton,* 4 W. Va. 352.

2. When a bill is dismissed notice must be given to the opposite party of a motion to reinstate. *Smith* v. *Wilson,* 26 Ill. 128; *Tibbs* v. *Allen,* 29 id. 535; *Welch* v. *Louis et al.* 31 id. 446.

3. A party can not rescind a contract of sale without a return of the property purchased or received in exchange, in as good condition as when received, unless it is entirely worthless. Benjamin on Sales, p. 414, § 452; *Griffith* v. *Frederick Co. Bank,* 6 Gill & John. (Md.) 424; *Martin* v. *Bardus,* 1 Freeman's (Miss.) Chancery, 35; *Blen* v. *The Bear River and*

*Auburn Water and Mining Co.* 20 Cal. 602; *Fisher* v. *Wilson,* 18 Ind. 123; *Cook* v. *Gilman,* 34 N. H. 557; *Shephard et al.* v. *Fisher et al.* 17 Ind. 229; *Shaw et al.* v. *Barnhart,* id. 183; *DeShaw's Exrs.* v. *Robinson's Exrs.* 17 Ark. 228; *Weeks* v. *Rob,* 42 N. H. 316; *Clarkson* v. *Mitchel,* 3 E. D. Smith (N. Y.) 269; *Williamson* v. *Moor,* 2 Disney (Ohio), 30; *Getring* v. *Newell et al.* 9 Ind. 572; *Garand* v. *Boling,* 1 Hempst. 710; *Lone* v. *Latimer,* 41 Ga. 171; *Turner, etc.* v. *Irun Clay, etc.* 3 Biss. 52; *Ellington* v. *King,* 49 Ill. 449; *Jarrett* v. *Martin,* 44 Mo. 275; *Johnson* v. *Walker,* 25 Ark. 176.

A party can not rescind a contract and at the time retain the consideration, in whole or in part, which he has received under it. *Jennings* v. *Gage,* 13 Ill. 610; *Coolidge* v. *Bingham,* 1 Metcalf, 550; *Miner* v. *Bradley,* 22 Pick. 457; *Persley* v. *Balch,* 23 id. 286; *Norton* v. *Young,* 3 Greenleaf, 30; *Cushman* v. *Marshall,* 21 Me. 122; *Sumner* v. *Parker,* 36 N. H. 449; *Weeks* v. *Robie,* 52 id. 316; *Buchenau* v. *Horney,* 12 Ill. 336.

If the complainant, defendant in error, can not return the identical goods she received, so as to put plaintiff in error *in statu quo,* she can not rescind, but must sue at law. *Barge* v. *Cedar Rapids, etc., R. R. Co.* 32 Iowa, 101; *Parker* v. *Marques,* 64 Mo. 38; *White* v. *Thayer,* 121 Mass. 227; *Barfield* v. *Price,* 40 Cal. 535; *Groves* v. *Sanders,* 3 Otto, 55; *Constan* v. *Chapman,* 3 Moak, 178, and notes; *Grimolley* v. *Wills,* 12 id. and notes; *Scott* v. *Bilney,* 40 Miss. 119; *Underwood* v. *West,* 32 Ill. 397; *Larned* v. *Holmes,* 40 Miss. 30; *Harding* v. *Hoodley,* 11 Wheat. 103; *Slaughter, Admr.* v. *Green,* 13 Wall. 379; Story on Sales, § 426; Story's Eq. Jur. §§ 494, 499.

And the ability to restore the things purchased unchanged in condition, is indispensable to the exercise of the right to rescind, so that if she innocently changed that condition while ignorant of the fraud, she can not rescind. Benjamin on Sales, *supra; Hunt* v. *Silk,* 5 East, 449; *Blackburn* v. *Smith,* 2 Exch. 783; *Sully* v. *Team,* 10 id, 535; *Clark* v. *Dick,*

E. B. & E. 148; *Savage* v. *Corning*, 16 W. R., 1 Irish C. L. R, 434; 2 Chitty on Contracts, (11th Am. ed.) 1092; *Morse* v. *Brackett*, 98 Mass. 209; *Lyon* v. *Bertram*, 20 How. (U. S.) 149; *Bartlett* v. *Drake*, 100 Mass. 176; *Coolidge* v. *Brigham*, 1 Metcalf, 547; *Stevens* v. *Austin*, id. 557; *Kimbal* v. *Cunningham*, 4 Mass. 502; *Conner* v. *Henderson*, 15 id. 319; *Thayer* v. *Turner*, 8 Metcalf, 550; *Martin* v. *Roberts*, 5 Cushing, 126; *Shepherd* v. *Temple*, 3 N. H. 455; *Wiggin* v. *Foss*, 4 id. 294; *Lucy* v. *Bundy*, 9 id. 298; *Cook* v. *Gilman*, 34 id. 456; *Webb* v. *Stone*, 24 id. 282; *Monahan* v. *Noyes*, 52 id. 232; *Burton* v. *Stewart*, 3 Wend. 236; *Johnson* v. *Titus*, 2 Hill, 606; *Hammond* v. *Buckmaster*, 22 Vt. 375; *Fay* v. *Oliver*, 20 id. 118; *Allen* v. *Edgarton*, 23 id. 442; *Howard* v. *Cadwalader*, 5 Blackf. 225; *Peters* v. *Gooch*, 4 id. 511; *Newell* v. *Turner*, 9 Porter, 420; *Bacon* v. *Brown*, 4 Bibb, 91; *Reed* v. *McGrew*, 5 Ham. 386; *Potter* v. *Titcomb*, 23 Me. 300; *Mixer's case*, 4 Del. & J. (Am. ed.) 586; *Rawlins* v. *Nickham*, 3 DeG. & G. 322.

If a party, after discovery of the fraud, desires to rescind, he must announce his purpose and adhere to it. If he be silent and continues to treat the property received as his own, he will be held to have waived his objection, and will as conclusively be bound by the contract as if the mistake or fraud had not occurred. This is especially applicable to speculative property like that here. *Thomas* v. *Bartow*, 48 N. Y. 200; *Flint* v. *Wood*, 9 Hare, 622; *Jennings* v. *Broughton*, 5 De G., M. & G. 139; *Lloyd* v. *Brewster*, 4 Paige, 537; *Saratoga & S. R. R. Co.* v. *Rowe*, 24 Wend. 74; *Mintum* v. *Main*, 3 Seld. 220; 7 Rob. Prac. C. 25, sec. 2, p. 432; *Campbell* v. *Fleming*, 1 A. & El. 51; Sugden on Vendors, (14th ed.) 335; *Dirnon* v. *Providence, W. & B. R. R. Co.* 5 R. I. 130.

The defendant in error should have offered in her bill to pay taxes and for repairs. *Wilson* v. *Haecker et al.* 85 Ill. 349; *Chambers et al.* v. *Jones*, 72 id. 280.

The former adjudications of this case by this court are not a bar to submitting the same now on its merits.

Messrs. LODGE & HUSTON, and Mr. L. WELDON, for the defendant in error:

The writ of error will not lie in this case after the partial reversal of the decree of the circuit court and a remanding of the cause for further proceedings. From these subsequent proceedings an appeal was prosecuted to the Appellate Court, when the entire record was reviewed, and the entire decree affirmed, and this at the instance of the plaintiff in error.

The rules governing the rescinding of trades do not apply, for no trade was, in fact, consummated between the parties to this suit. The deed was obtained by Smith, by means of false pretenses in writing—the false invoices; its delivery was procured by fraud, and the transaction did not amount to a trade between these parties, and hence there was no trade or contract to rescind. The essential element of two consenting minds was lacking, and Mrs. B. acted under the belief that a trade had been made on the basis proposed by Smith, when in fact no such trade had been or ever was made.

The doctrine of equity is compensation,—not to allow a party to rescind a contract and retain advantages under it. *Bryant* v. *Brant*, 42 Ill. 78.

In *Whitney* v. *Roberts*, 22 Ill. 381, this court held that a deed obtained by fraud or deceit, was void and that the grantee of the defrauded party could set it aside in equity.

There was no proof that any taxes were paid, or repairs or improvements made, and the rents exceed the value of the goods $800.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, filed in the circuit court of DeWitt county, on the 14th day of August, 1874, by Sarah J. Brittenham against Columbus C. Smith, to have set aside a conveyance of 237 acres of land, made by her to him on the 12th day of January, 1869, in exchange for a stock of

goods, on the ground of alleged fraud on the part of Smith in the making of the contract for such exchange.

Personal service of summons was had on Smith, and he failing to appear and answer, the bill was taken for confessed against him at the August term, 1874.

At the following December term an order was made dismissing the cause for want of prosecution, which order, two days afterward, at the same term, was set aside, and the cause reinstated without notice to Smith. He did not appear in the court until after the final decree. At the December term, 1876, the cause was referred to the master, to take testimony, etc., who reported that the value of the goods received by the complainant was $4500, and the rental value of the land during the time the defendant had held the same under the deed, to be $5300, and at the same December term the court rendered a decree cancelling the deed and setting off the value of the goods against the rent of the land. At the next March term Smith entered a motion to vacate the decree and for leave to answer the bill. The court overruled the motion, from which decision Smith prosecuted an appeal to this court, and the ruling of the circuit court in refusing to set aside the decree and admit an answer, was affirmed. See *Smith* v. *Brittenham*, 88 Ill. 291.

This court holding that this appeal did not bring before it anything but the decision of the circuit court overruling said motion, and the Appellate Court having in the meantime been organized, afterward, Smith sued out a writ of error from the Appellate Court for the Third District, to the circuit court, and filed in the Appellate Court a complete copy of the record, and on a final hearing in that court at the November term, 1878, the decree of the circuit court, in the respect of ordering a writ of assistance to issue, was reversed, and in all other respects said decree was affirmed. The cause was remanded to the circuit court, where such proceedings were had, at the March term, 1879, that another writ of assistance was ordered by the circuit court. From this order

13—98 ILL.

Smith again appealed to the Appellate Court, and that court at the May term, 1879, affirmed the order of the circuit court, awarding the writ of assistance.

From this judgment of affirmance Smith again appealed to this court, and the judgment was affirmed. See *Smith v. Brittenham*, 94 Ill. 627. Subsequently this present writ of error was sued out to the Appellate Court, by which the entire record in the case is brought up, and plaintiff in error, Smith, challenges the correctness of the decision of the Appellate Court at its November term, 1878, affirming the decree of the circuit court except in the respect of the writ of assistance.

Preliminarily, defendant in error insists that this writ of error will not lie, in view of the previous proceedings above recited, which have been had in the case,—that in consequence of them the decree of the circuit court has become *res adjudicata*, and plaintiff in error therefore precluded from bringing in question its correctness.

It is very clear that there has never been, in fact, any adjudication of this court in respect to the correctness of that decree. On the first appeal to this court we distinctly declared that there was nothing before us for consideration but the decision of the circuit court overruling the motion to vacate the decree and for leave to answer, and said we forbore to remark upon the merits of the case. On the second appeal to this court, we said the appeal was not from the judgment of affirmance of the Appellate Court at its November term, 1878, of the decree of the circuit court except as to the writ of assistance, but that it was from the Appellate Court's judgment of its May term, 1879, affirming the order of the circuit court awarding another writ of assistance, and that the entire record in the cause was not before us.

Only the two rulings of the circuit court then have been reviewed by this court—the denial of the motion to vacate the decree, and the order awarding a writ of assistance—and it appears that this court declined to consider any thing

further.   Plaintiff in error is entitled to have reviewed in this court the propriety of the main decree of the circuit court, and we do not think that he should be barred from his present writ of error for that purpose, by anything which has transpired in the case heretofore.

The plaintiff in error, Smith, makes the point, that after the dismissal of the cause in the circuit court at the December term, 1874, the subsequent vacating of the order and rein- stating of the case at that term was erroneous without notice to him of the motion for that purpose.   We do not so think. Smith having before been brought into court by service of process, was bound to take notice of all the orders which were made in the cause at that same term of court, and as well after as before the making of the order of dismissal.

We come then to the question of the correctness of the decree of the circuit court.   The default of Smith admitted such facts as are properly alleged in the bill, and no more, and the inquiry is whether the bill states sufficient facts to warrant the decree.

We give the bill in its material part.   After describing the land and being seized of it, the bill proceeds:

" Oratrix would further represent that while so seized of the land aforesaid, Columbus C. Smith, on or about the 1st day of January, A. D. 1869, made a proposition to the husband of oratrix to trade and exchange a stock of goods then owned by said Smith, for said land, the said Smith then and there proposing to said husband to buy said land at the sum of $14,000, and pay for the same in said stock of goods, at their original cost, and that the same were to be invoiced and the difference either way to be paid by the said parties; that after such negotiation the said proposition was communicated to oratrix; that upon the faith of such representations, and un- dertakings on the part of said Smith, as to the invoice and price of said goods, oratrix consented to make such trade, and in consummation thereof, oratrix did, on the 12th day of January, 1869, in connection with her husband, make, exc-

cute and deliver to said Smith, a deed of general warranty for said land, a copy of which is hereto annexed and asked to be considered a part of this bill, and that in pursuance of the rights and powers of said deed, the said Smith entered into and took possession of said lands, and has continued in such possession ever since, receiving the rents and profits of the same.

"Oratrix would further state that after oratrix consented to make said exchange upon the faith of said representations, the said Smith, to injure and defraud oratrix, made a false and fraudulent inventory of said goods, and then and there in such inventory did take advantage of said John A. Brittenham, he being at the time, to some extent, unsound in his mind, and being incapable because of such unsoundness to protect the interests and rights of oratrix, and oratrix charges that a false and fraudulent inventory of such goods was made for the purpose of cheating oratrix, and that in such inventory, the same being false, oratrix was cheated out of a large amount; and oratrix further states and charges that a large amount of goods included in the inventory was not delivered to her, or her said husband, or to any person for their use; but on the contrary, the value of the goods delivered was $5000 less than the amount of inventory. Oratrix further states that said goods were not worth to exceed $4000; that the amount not delivered of the goods as aforesaid, and the falsity of said inventory, reduced the actual value of the goods received by oratrix to the said amount of $4000; that oratrix was ignorant of said fraudulent act of the said Smith until a short time—to-wit: five days—before the meeting of the last term of this court; that oratrix was not skilled in business of merchandise or the value of dry goods, and that owing to said condition of her said husband, he was wholly unfit to detect said fraud or protect the rights of oratrix in the consummation of said trade; said Smith still has the title and possession of said land; that the rents and profits of said land since the said Smith got the same,

have been and are sufficient to pay said Smith whatever said goods were worth as delivered to oratrix under said trade. Forasmuch as your oratrix is without an adequate remedy, except in a court of equity, oratrix asks that said Smith be made defendant herein, that he may be required to answer this bill, but not on oath, answer on oath being waived, that an account be stated between the parties as to the value of said goods and the use of said lands, that if anything be due defendant on such accounting, oratrix is ready and waiting to pay said defendant, that in consequence of the deception and bad faith as aforesaid the defendant be required to reconvey said land to oratrix, and that said sale be rendered null and void; and your oratrix asks such further relief," etc.

It will be seen that the bill does not show that the goods traded by Smith for the land have been returned or offered to be returned to him, or any excuse for not doing so. In *Buchenau* v. *Horney*, 12 Ill. 338, this court said: "A party can not rescind a contract of sale, and at the same time retain the consideration he has received. He can not affirm the contract as to part, and avoid the residue, but must rescind *in toto*. He must put the other party in as good condition as before the sale, by a return of the property purchased. There may be an exception when the subject matter of the sale is entirely worthless. But if it is of any benefit to the seller, the purchaser must restore it before he can put an end to the contract." And see *Wolf* v. *Dietzsch*, 75 Ill. 205, among many other cases in this court, to the same effect.

Mr. Benjamin, in his work on Sales, § 452, says upon this subject: "And if he (the buyer of goods) has paid the price, he may recover it back on offering to return the goods in the same state in which he received them. And this ability to restore the thing purchased unchanged in condition is indispensable to the exercise of the right to rescind, so that if the purchaser has innocently changed that condition while ignorant of the fraud, he can not rescind."

If there be any excuse in the case which could be accepted for not making, or offering to make return of the goods, none whatever is shown by the bill, so that the general rule as above stated must apply here; and under that rule the bill makes no case of a right to rescind the contract.

Aside from the above we are of opinion the facts alleged in the bill are not sufficient to authorize the decree. There is an attempt to set up two matters as ground for the rescission of the contract—the making of a false and fraudulent inventory of the goods, and the not delivering of a large amount of goods included in the inventory. In respect to the last the charge is, "that a large amount of goods included in the inventory was not delivered to her,—but, on the contrary, the value of the goods delivered was $5000 less than the amount of the inventory."

Now, taking this whole charge together, it really does not charge that any goods included in the inventory were kept back. The attempted statement that there was, in the first clause, is rendered valueless as an allegation of such a fact by the last clause stating what was done in that regard, namely, "but, on the contrary, the value of the goods delivered was $5000 less than the amount of the inventory." So that, taken altogether, the whole charge in that respect, as we read it, is, that the value of the goods delivered was $5000 less than the amount of the original cost price as appearing by the inventory. The amount of the inventory, we take to be the amount of the inventory prices, and the inventory prices to be the original cost prices of the goods. If it be susceptible of any other meaning, such meaning is not obvious, and the above is the meaning we conceive, which, as against the pleader, is entitled to be put upon that expression.

Now, what does it matter in the way of entitling complainant to relief, that the value of the goods received was $5000 less than the amount of the inventory—the amount of the original cost prices of the goods? The contract price for the

goods was the original cost of the goods, not the value of the goods, and the discrepancy between the value of the goods received and the original cost price of the goods, would furnish no ground for any relief under the contract.

The other charge is in the general terms that defendant made a false and fraudulent inventory of the goods, in which complainant was cheated of a large amount, without at all naming in what respect the inventory was false and fraudulent. Charges of fraud should not be general, but the facts should be stated on which the charges are based. *Newell* v. *Bureau Co.* 37 Ill. 253.

After alleging that the goods were not worth to exceed $4000, then the whole amount of damage, as resulting from both the said causes of complaint, is stated to be, " that the amount not delivered, of the goods, and the falsity of said inventory, reduced the actual value of the goods received by oratrix to the said amount of $4000." What damage or ground of complaint does this show under the contract ? Reduced the value of the goods from what sum, or from what?

The actual value of the goods may not have been more than $4000, and yet the original cost price, at which they were to be taken, have been as much as $14,000, the full agreed price for the land. As already observed, the value of the goods is unimportant. It is their original cost price which is the essential thing. It is noteworthy that the bill fails to state anything as to the original cost of the goods, or as to the inventory price, or as to any discrepancy between the inventory price and the original cost. It but states the value of the goods received, proceeding, seemingly, upon the theory that the discrepancy between their value and that of the land, was ground sufficient for having the contract rescinded, or at least that that was enough of damage to show. There must be damage, as well as fraud. They must concur, for the annullment of a contract. The facts alleged do not show damage. The bill does not make a case for the rescinding of the contract of sale of the land.

It is said that proofs taken by the master show a case. Without looking into them to see whether they do or not, it is not enough that they may do so,—they can not supply the want of allegations in the bill. The decree must be according to the allegations as well as proofs, and, unless the bill states sufficient facts to warrant the decree, it can not stand.

The judgment of the Appellate Court will be reversed, and the cause remanded, with directions to reverse the decree of the circuit court, and remand the case, with leave to amend the bill if complainant shall be so advised, and with liberty to answer.

*Judgment reversed.*

SCOTT, J.: I dissent from the conclusions reached on all the questions discussed in this opinion.