WILLIAM MERRILL v. JOSEPH D. WILSON ET AL.

*Equity—Fraud—Rescission of contract—Vendor's lien.*

1. A person who has been defrauded must act *promptly*, and, if he would repudiate the contract complained of, must do nothing in *affirmance* of it after ascertaining the facts; nor can he repudiate it, and retain the fruits or benefits of the transaction.

2. It is an established doctrine that a court of equity will not rescind a contract on the ground of fraud, when the party asking the relief is not able to put those against whom it is sought into the same situation in which they stood when the contract was entered into.

2. Bringing suit by a grantor to recover the unpaid purchase money on a sale of lands alleged to have been secured through fraud is an affirmation of the contract of sale, and prevents its subsequent repudiation on such ground; and in any case the return of the money received is a condition precedent to such repudiation.

4. On the facts stated in the opinion the complainant is held to have affirmed the contract of sale, but to be entitled to enforce a vendor's lien for the unpaid purchase money, his bill stating a case upon which such relief can be based.

Appeal from Alger. (Steere, J.) Argued April 19 and 20, 1887. Decided June 9, 1887.

Bill to set aside a deed for fraud, and for reconveyance, etc. Decree below granting relief prayed for modified so as to conform to opinion, and, as modified, affirmed. The facts are stated in the opinion.

*E. L. Beach,* for complainant.

*Tarsney & Weadock,* for defendant Wilson.

CHAMPLIN, J. Complainant filed his bill in this cause on the seventh day of April, 1886, stating that he was the owner in fee of certain lands in Alger county, Michigan, therein particularly described; that prior to the third day of

October, 1885, he placed in the hands of Combs & Wilson, real-estate agents in East Saginaw, these lands for sale, with instructions to sell the same for cash, and for cash only, and that he would make no other contract, and, if a sale for cash could not be made, he would withdraw them from the market. Combs & Wilson informed complainant that they had found a purchaser who would pay complainant the sum of $4,856, $2,000 in cash, and give a mortgage back for the balance of the purchase price, as a sale could not be made for cash. Complainant refused to make a sale except for cash. Combs was at complainant's home in Canada when complainant received a telegram from Wilson stating that the money was ready, and that, as soon as a deed was delivered, the money would be paid (but which he afterwards ascertained to be untrue). Complainant relying upon the truth of said telegram, with his wife, executed a deed of said timber to Denfield & Mason. He was induced to sign said deed by the false representations so made to him.

October 20, 1885, Denfield, and Mason and his wife, conveyed by deed all the pine timber on 17 forties for $6,000, of which $3,000 was paid down, and a mortgage given back for $3,000, the balance of the purchase price. There now remains unsold of the pine timber aforesaid 320 acres.

At the time the deed was made by Denfield and Mason to Foss and Leiter, a contract was made by Combs & Wilson, and delivered to Foss and Leiter, showing that Denfield and Mason held the pine timber for Combs & Wilson.

Complainant claims that Denfield and Mason never had any interest in the said timber. Neither was there a deed delivered to either of them, nor any money paid by either of them, but the same was held by them under an arrangement made between said Combs & Wilson by which they could resell through Denfield and Mason, and profit largely thereby. This arrangement, and its object, was well known to all the defendants, who thus conspired to cheat and defraud complainant in the premises. Combs &

Wilson paid nothing for the land or timber, and no money was paid to complainant except a portion of that which was paid by Foss and Leiter to Combs & Wilson.

On the twenty-sixth day of March, 1886, Denfield quit-claimed all right, title, and interest which he held in the timber to the complainant. Complainant requested Mason to reconvey to him all his right therein, which Mason refused to do. He charges that Combs, Wilson, Denfield, and Mason conspired to defraud complainant out of his just rights, and prays that the defendants be required to convey to complainant their interest in said land and timber, and also for general relief.

The bill was taken as confessed by defendants Combs and Denfield.

Mason answered, stating that he had conveyed to defendant Wilson, and disclaimed all interest.

Wilson answered the bill. He admits the execution of the deed of October 3, 1885; that Combs & Wilson were real-estate agents doing business in East Saginaw; denies that they ever acted as agents for the complainant; claims they had written option from complainant to purchase the timber; denies that complainant ever instructed Combs & Wilson to sell for cash, but asserts that it was always understood that a portion of the purchase price should be on time; asserts that the deed was executed to Denfield and Mason to avoid family difficulties between Combs, who was Merrill's son-in-law, and Mr. Merrill, and that Denfield represented Combs interest, and Mason his own, and that Denfield and Mason merely held the title in trust for Combs & Wilson; denies all intent to cheat and defraud or harm in any manner said complainant; denies that he sent the telegram alleged in the bill, and asserts that he sent the following telegram:

"From EAST SAGINAW, MICH., 2-10-85.

" *W. Merrill:* Has deed been sent through banks here for collection? Don't get any letter from you folks. Money ready.

[Signed.]   J. D. WILSON."

Says that Combs & Wilson, relying upon the option which they held from Merrill, negotiated a sale to Foss and Leiter, before the deed of October 3 was executed, for part cash and part on time, and, when he sent the telegram, he did it with the intention and for the sole purpose of having said deed forwarded through some reliable bank in the city of East Saginaw, where the same might be kept until the payment of the purchase price thereof; that he believed the said Merrill would follow the instructions and statement set forth in the telegram; says that the deed was delivered to Denfield and Mason, and they, at the request of Combs & Wilson, executed a conveyance of a portion of the timber deeded to them to Foss and Leiter, and consented that Combs & Wilson should take back a mortgage to secure the balance of the purchase price, and permitted Combs & Wilson to receive the down payment of $3,000; admits that the timber on 320 acres remains undisposed of; says that complainant has received $3,856 of the purchase price, and that $1,000 yet remains to be paid to him according to the terms of his deed, and that it has not been paid owing to a difficulty arising between himself and partner, Mr. Combs; asserts that he is the owner in fee simple of an undivided half of the timber upon the unsold 320 acres of land, and that he is ready and willing, and in his answer offers, to pay into court or to Merrill "all sums which a court of competent jurisdiction may decree to be due to said William Merrill as the balance of the purchase price of said lands so purchased by said Combs & Wilson."

Alleges that complainant, with knowledge of all the facts set up in the bill, commenced an action at law against Mason to recover the sum of $1,000, balance of the purchase price of said timber, and that he also prosecuted defendant Wilson for embezzlement of said thousand dollars.

Alleges that the pine timber was purchased of Merrill upon the express understanding that he should wait until the payment of the mortgage of $2,000 made by Denfield and

Mason at the time of the transaction to Merrill, and therefore claims that neither he nor the firm of Combs & Wilson, owed Merrill anything, as it had not become due; and that the proceeds of the sale to Foss and Leiter was the sole and individual money of Combs & Wilson, with which they could do as they pleased.

The court below entered a decree in favor of complainant against defendant Joseph D. Wilson, and dismissed the bill of complaint as to the others. Wilson appeals.

The material facts in the case may be briefly summarized as follows: Combs and Wilson entered into a copartnership in the real-estate business. As a part of that transaction, Combs agreed to pay Wilson $1,000. For this he gave his note on one year's time, indorsed by William Merrill, the complainant. The articles of copartnership bear date October 6, 1834. Merrill was the father-in-law of Combs, and resided at Norwhich, in the province of Ontario. He was the owner of about 1,200 acres of land in the Northern Peninsula of Michigan, mainly valuable for the timber growing thereon. The title to a portion of this land was imperfect, and he had employed Combs & Wilson, and they had acted for him in perfecting such title. Merrill had purchased a portion of the land from one Hyde, but, neglecting to record his deed promptly, Hyde had sold it again, and conveyed it to another party. Combs & Wilson endeavored to secure a settlement with Hyde, and had obtained his note for $1,600, or thereabouts.

From the time the partnership was formed, to September, 1885, Combs & Wilson had been endeavoring to sell the lands owned by Mr. Merrill for him, but had not succeeded. Merrill had offered to sell for $6,500 cash, reserving the land, and afterwards, on September 4, 1885, he seems to have made another offer, the particulars of which are not stated; but it called out a letter from Combs & Wilson to Mr. Merrill, dated September 7, 1885, in which they say:

"As to your offer of September 4th, we simply say that it

is impossible for us to pay $1,000 to $1,500 more than we can get, besides getting nothing for selling the land; and, further, we could not make a good deed of these lands until some action is taken by the United States Land Commissioner. In the commencement you said you would take $6,500, and it is no fault of ours that you could not make a good deed. We have tried our best in this matter for you. * * * If you will keep your first agreement on this matter, we will use every effort to get the lands from Hewitt, and the title from government; but with your holding out, Hewitt holding out, and the government not approving of the location, we are in a bad shape to get recompensed for the large amount of work and expense we have been to."

They close by asking a definite answer as soon as possible.

Merrill answered this letter on September 10, 1885, as follows:

"NORWICH, September 10, 1885.

" COMBS & WILSON,—

" *Messrs.:* Yours at hand, and contents noted. I will stand to my first offer on the Au Train timber; that is, $6,500, reserving the land, and the 160 acres near the R. R. This offer holds good for 90 days from above date. All well.

"Yours,          WM. MERRILL."

Combs & Wilson were negotiating with Foss and Leiter, of Bay City, for a sale to them of a portion of the Au Train lands. After receiving the above letter of September 10, Combs & Wilson prepared a deed of the timber upon the Au Train land, running from Merrill and his wife to William F. Denfield and Orin Mason, conveying to them the pine timber standing thereon, and granting them five years in which to remove it. Combs took this deed to Norwich, and represented to his father-in-law that the grantees therein named desired to purchase the timber on 25 forties, and they could get him $4.856 for it, but could not get cash; and, if he would consent to take a mortgage back of $2,000 of the purchase price, they could close the deal with him. Mr. Merrill refused, and said he would not consent to it; that, if he could not have the money, he would not deed it.

On September 26, 1885, Combs wrote to Wilson from Norwich, in which he says:

"As to Merrill, I have had several talks with him, and think I will have no difficulty in making arrangements at this end all right. He says he must have all cash; but, if we cannot get all cash, I think I can arrange even that. Make your best bargain with Foss, and leave the rest with me; that is, if the note from Hyde is paid."

To this letter Wilson replied September 29, saying:

"This is 3 P. M. You can get the deed signed as we made it out, and I have no doubt of the trade closing. It is simply in the amount down. I expect and hope to get it in cash, but I think we can float this loan so as to give Merrill his money, or say all but $1,000 payable say next July. I think if I were forced I would indorse this note. We could pull through. * * * Let the deed be signed and placed in the bank, to be sent here to East Saginaw National or Second National, as you prefer, for collection, without restriction as to time to return. * * * Now, if you can get this matter arranged at your end of the route, it will at this. Tell Merrill I am doing my best to get him cash, but it is a difficult job."

On October 1, 1885, Wilson wrote again to Combs:

"I cannot understand why you do not write, and let me know what you are doing, or if the deeds are executed and put into the bank for collection."

He then states how he expects to pay Merrill, and says:

"Merrill can place the deed in the bank, and make a draft on me for $6,500, and direct the bank to accept the Hyde note for its face with int., and my note for face and interest, and, farther, to accept our firm receipt for the bill we hold against him of 80 odd dollars. Believe I can pull it through either by giving him a small mortgage, or floating the mortgage here. * * * The people buying these lands agree to pay $6,500 for the 200 acres if Merrill can make a good title before January, 1886. * * * If you have this done, deeds, drafts, etc., placed in the bank, don't see there is any use for you to stay there. If the Hyde note is paid, of course the $6,500 draft on me must either be paid with the note, and, if I cannot produce the note, then of course

the bank must get cash; and, if Mason and Denfield cannot pay cash, they must give me and you securiety, and I will then give up my note, and take this security; and, as they cannot pay before they cut, we will get some money inside of 30 days; and, if necessary, by me indorsing a $500 note, we can get the money for $5."

On the second of October, 1885, Wilson followed this letter with a telegram to Mr. Merrill, as follows:

"EAST SAGINAW, MICH., 2–10, 1885.
"*Wm. Merrill:* Has deed been sent through banks here for collection? Don't get any letters from you folks. Money ready.          J. D. WILSON."

Upon the receipt of this telegram, and relying upon the statement that the money was ready, and not being informed otherwise by Combs, who must have known from the letters of Wilson that the money was not ready, but that the sale to Foss and Leiter had not been consumated, Mr. Merrill and his wife executed the deed of October 3, 1885, to Denfield and Mason, and, instead of sending it through a bank for collection, sent it by Combs, to whom he gave the following order on Combs & Wilson for the money:

"NORWICH, October 3, 1885.
"TO THE FIRM OF COMBS & WILSON,
  "East Saginaw:
"This is to certify that I authorize J. A. Combs, of the above firm, to receive the money which they are to receive on sale of timber for me, and to remit the same by draft to me after paying note, and said note of one thousand dollars ($1,000), and interest account of eighty-eight dollars, less fifteen dollars, paid J. A. Combs.
                         "WM. MERRILL."

Combs returned with the deed and order to East Saginaw. On the twelfth of October, 1885, Wilson, in the firm name of Combs & Wilson, wrote to Messrs. Foss and Leiter, saying:

"We cannot make good terms as we would like, and as you wish, as the owner insists on cash. We would gladly accommodate you if it were possible. * * * The price, $6,000, is satisfactory. * * * We shall do

anything we can to help you, but cash seems to be the only bar between us."

This was after Combs had returned with the deed, and shows that Wilson well understood that Merrill's conveyance was conditioned upon a sale for cash; and that he, at least, did not intend it as a sale upon credit for any part of the consideration going to him. The negotiations between Combs & Wilson and Foss and Leiter at length culminated in a sale to them of a portion of the land embraced in the deed to Denfield and Mason, comprising 17 forties, for $6,000, of which $3,000 was paid down to Combs & Wilson, and a mortgage executed upon the lands purchased to secure the payment of the balance of $3,000, for which two notes were given, one for $2,000, and one for $1,000, but both to become due one year from date. These securities bore date November 4, 1885. The acknowledgments were not perfected until the fourteenth of November, and both deed and mortgage were recorded December 4, 1885. Combs & Wilson did not remit to Merrill the $3,000 paid down by Foss and Leiter, but applied a portion to the payment of the note held by Wilson, made by Combs and indorsed by Merrill, amounting to $1,070, or thereabouts, another portion to the payment of an account of Combs & Wilson of about $75, and remitted to Merrill a sufficient amount of money which, added to the two items mentioned, amounted to $2,856, leaving a balance of $2,000 of the purchase price unpaid.

Mr. Merrill was not satisfied with the manner in which the business had been conducted, and he wrote Combs & Wilson, under date of December 22, 1885, expressing his dissatisfaction, and restating what the agreement with them was. In it he refers to the Hyde note, and says he wants it collected as soon as possible, and says:

"Whose name is the mortgage in, and what have I got to show for either of them ? You said that you thought that you could get money on the mortgage by paying two cents. If you can get it for two or three, get it as soon as possible."

Upon the receipt of this letter, Combs & Wilson negotiated a sale of the Foss and Leiter mortgage to Mrs. Beckwith for its face, and received from her $3,000, less $5 for recording and expenses. The assignment was made on the twelfth day of January, 1886. This money was divided between Combs and Wilson. Combs insisted that the balance of $2,000 due Mr. Merrill should be sent to him out of the avails of this mortgage, but Wilson refused to do so, claiming to Combs that nothing was due Merrill until the time when the Foss and Leiter mortgage would mature, in November, 1886. Combs sent forward $1,000 to Merrill, and the remaining thousand dollars is still unpaid.

On November 9, 1885, Wilson proposed to Combs that Mason should execute a note and a mortgage upon his undivided half interest in the pine timber upon the remaining eight forties, included in the deed to Denfield and Mason, not included in the sale to Foss and Leiter, for $1,000, to become due November 9, 1886, which note he would indorse, said note and mortgage running to Merrill; and that Denfield should make and execute a like note and mortgage, which Combs should indorse, and that these should be sent to Merrill for the balance due him on the purchase price of the land. Combs says that he refused to take the security in this way; that, after the sale to Foss and Leiter, he (Combs) insisted that Merrill should have security for the $2,000; and that Wilson proposed to secure it as above. Wilson says that the agreement with Foss and Leiter was made before Combs went to Canada, and that he knew that Foss and Leiter would not pay more than $3,000 down, and that he and Combs talked it over, and that they would pay Merrill $2,856, and the balance on time. In this respect, Wilson's testimony is contradicted by his letter to Foss and Leiter of date October 12, 1885, and his letter to Combs of October 1, 1885. Wilson says that Mason executed the note and mortgage of $1,000, and he delivered them to

Combs, and that Denfield also did likewise, and that they were accepted by Mr. Combs, acting under this written instruction of October 3, 1885; that they were delivered to Combs on the eleventh day of December, 1885, and remained in his possession until January 13, 1886, when he (Wilson) took the mortgage and note executed by Mason from the firm's safe, and has since had possession and control of the same. Combs says that a note and mortgage were drawn up for Denfield to sign, but that he never executed them, as he (Combs) refused to accept them; that he had no authority to do so; and that Merrill was not informed thereof, and knew nothing about it. Here, again, the testimony of Mr. Combs is borne out by the facts.

The instruction given by Merrill to Combs on the firm of Combs & Wilson, of date October 3, 1885, conferred no authority whatever upon Combs to accept Mason's and Denfield's notes and mortgages in lieu of money or as money, and this Wilson knew, for it is apparent upon its face; and the further facts which transpired make it certain that Wilson knew that Merrill never authorized any such thing. His letter of December 22, expressing dissatisfaction, and directing them to discount the mortgage and send him the money; the sale of the mortgage to Beckwith, and the demand made by Combs that the balance of $2,000 should be sent to Merrill; the refusal of Wilson to consent or comply with the demand; the threat of Combs to inform Merrill of the whole transaction; and the dissolution of the firm by Wilson, arising out of this dispute,—all show that there was no such agreement which was binding on Merrill, as Wilson claims.

That Merrill was deceived by Combs & Wilson, and led into the execution of the deed to Denfield and Mason upon the representation that he should receive the purchase price in cash, beyond the note and account mentioned in his order of October 3, is too clear for dispute. That he was imposed upon by Combs & Wilson in the subsequent transactions is

equally clear. The facts fully warranted him in rescinding his contract; and, if the rights of innocent third parties had not intervened, he would have been entitled to a cancellation of the deed upon being informed of the fraud practiced upon him. A person, however, who has been defrauded, must act promptly; and, if he would repudiate the contract, he must do nothing in affirmance of it after ascertaining the facts. Moreover, he cannot repudiate it, and retain the fruits or benefits of the transaction at the same time.

It is an established doctrine that a court of equity will not rescind a contract on the ground of fraud, when the party asking the relief is not able to put those against whom it is sought into the same situation in which they stood when the contract was entered into. *Western Bank of Scotland v. Addie*, L. R. 1 Scotch & D. App. 145, 164; *Mixer's Case*, 4 De Gex & J. 586; *Scholefield v. Templer*, Id. 429; *Rawlins v. Wickham*, 3 Id. 322; *Clarke v. Dickson*, El., Bl. & El. 148; *Oakes v. Turquand*, L. R. 2 H. L. 346; *White v. Garden*, 10 C. B. 919; 2 Pom. Eq. Jur. § 897, and cases cited; also section 915; *Farmers' Bank v. Groves*, 12 How. 51; *Potter v. Titcomb*, 22 Me. 300; *Smith v. Brittenham*, 98 Ill. 188.

As early as December 22, 1885, the complainant knew that the sale was not made to Denfield and Mason, and that Combs & Wilson had gotten possession of his deed without paying cash, or having the money ready; that they had sold the timber, and had taken a mortgage; and after the mortgage was sold by his request, and Wilson refused to pay the thousand dollars still due of the purchase price, and after he was fully informed of the facts by Combs, he commenced a suit against Mason to recover the one-half of the purchase money named in the deed to Denfield and Mason, alleging that Denfield had paid one-half of such purchase money, and had been released from all liability under the provisions of sections 7783-7787 of Howell's Statutes. After bringing suit to recover such purchase money, it is no longer open to him

to repudiate the sale on the ground of fraud. The bringing of the suit in assumpsit was an affirmation of the contract of sale, and the complainant is not at liberty to repudiate it thereafter on the ground of fraud. Nor could he do so in any case without returning the money received upon the sale. A contract cannot be repudiated in part and affirmed in part. *Galloway v. Holmes*, 1 Doug. 330; *Peninsular Bank v. Hanmer*, 14 Mich. 208; *Jewett v. Petit*, 4 Id. 508; *Draper v. Fletcher*, 26 Id. 156; *Thompson v. Howard*, 31 Id. 309, 312

But it does not follow that complainant is entitled to no relief. The defendant Wilson has a thousand dollars in his possession belonging to Merrill. Wilson claims that he and Combs purchased the timber on the land in question, and that Denfield and Mason were only their trustees to hold the legal title. By their direction the larger portion has been conveyed to Foss and Leiter. Of the balance Denfield has reconveyed an undivided half to complainant. The other undivided half has by Wilson's direction been conveyed to him, thus uniting in him both the legal and equitable title. The vendor holds a lien for the unpaid purchase money due from Wilson. He is entitled to have his lien declared and enforced. The question is, does the bill state a case upon which this relief can be based? I think it does. It sets out that Denfield and Mason really held the timber in trust for Combs & Wilson, and never paid anything, and were not to pay anything therefor. It also sets out a history of the transactions substantially as stated above. It contains a special prayer for relief, and also a general prayer, and, under the general prayer, I think the complainant is entitled to a decree that the defendant Wilson pay him, within 30 days, $1,000, and interest thereon at 7 per cent. from October 3, 1885, as unpaid purchase money, and that complainant has a lien upon the pine timber standing and being upon the undivided half part of the following described lands, viz.: The north half of the north-west quarter, and the south-west

quarter of the north-west quarter, and the west half of the south-west quarter, in section 32; also the west half of the north-east quarter, and the south-east quarter of the north-east quarter, in section 36,—all in town 46 north, range 20 west, in Michigan; and in default of such payment, and the costs of this suit to be taxed, that said Wilson's interest in said timber, as above stated, be sold in the same manner as mortgaged premises are sold upon foreclosure sales, and the complainant is at liberty to purchase at such sale.

The decree of the court below will be modified so as to conform to this opinion, and, so modified, will be affirmed, with the costs of both courts. A decree will be entered here in accordance with this opinion, and the cause and record remanded to the circuit court for the county of Alger, in chancery, for further proceedings.

The other Justices concurred.