## SANDERSON *v.* ADAMS.

DEEDS—INCAPACITY OF GRANTOR—AFFIRMANCE.

> Where complainant, when about to be arrested for the murder of her husband, made an improvident conveyance of her interest in his estate to defendants, and thereafter, when out on bail, and with knowledge of all the circumstances, accepted the amount agreed to be paid her, less a liberal discount for anticipating the time of payment, she thereby affirmed the previous agreement, and could not maintain a bill to set aside the conveyance.

Appeal from Calhoun; Winsor, J. Submitted April 21, 1903. (Docket No. 33.) Decided May 29, 1903.

Bill by Mary Sanderson against Jasper Adams, Ella Adams, Gavin Ritchie, Jr., Edward Stringham, George Stringham, and Lucius Sanderson to set aside certain conveyances. From a decree dismissing the bill as to all defendants except Ritchie, complainant appeals. Affirmed.

*Stewart, Sabin & Hooper*, for complainant.

*Mechem & Bailey* and *O. S. Clark*, for defendants.

CARPENTER, J. Complainant brought this suit to procure a decree setting aside certain conveyances executed by her conveying her interest in the estate of her deceased husband, Rudolphus Sanderson. One of these conveyances was dated October 15, 1898, and ran to Gavin Ritchie, Jr. The other was dated October 22, 1898, and ran to defendants George and Edward Stringham. The court below refused to set aside the conveyances, but rendered a personal decree against defendant Ritchie, compelling him to repay complainant $400 obtained by him. Complainant appeals to this court, asking the relief which was denied her in the court below.

The material facts established in this case are as follows: Rudolphus Sanderson, complainant's husband, died September 6, 1898. He left no will. He had no children. One half of his estate was inherited by his brothers and the daughters of a deceased sister. The other half was inherited by complainant. Soon after the death of her husband, complainant learned that defendant Jasper Adams, who was the brother of her husband's first wife, suspected her of murdering her husband, and that a criminal prosecution charging her with such murder was likely to be instituted. October 15, 1898, complainant was induced by the fraud of Gavin Ritchie, Jr., to make the first conveyance heretofore mentioned. Complainant received from Ritchie $100, and immediately went to Chicago, Ill. Shortly thereafter said criminal proceedings were instituted. Complainant thereupon returned, and consulted her lawyer in Marshall. On the 22d of

October, 1898, acting under the advice of this lawyer, complainant made a second transfer of said property to the defendants Stringham. Defendant Ritchie at the same time, at complainant's request, transferred all his interest to the Stringhams. Complainant received from the Stringhams $1,500 in cash ($600 of which she was compelled to and did pay to defendant Ritchie), and an agreement to pay the sum of $5,000 out of the first moneys received from the estate when it was settled, provided that, if the part of the indebtedness of the estate chargeable against complainant's share should exceed $250, the excess should be deducted from the $5,000 deferred payment. This agreement was made in the office of complainant's attorney. Complainant was not at that time actually in custody, but an officer was in fact and to her knowledge waiting to take her in custody as soon as this arrangement was made. October 26, 1898, the defendants Stringham transferred their interest in the property to defendant Jasper Adams and his brother Onyx, since deceased. The Adamses paid the Stringhams $9,000 for the one-half interest in the estate acquired by them. As a part of this consideration, they assumed the obligation of the Stringhams to complainant. On the 5th of August, 1899, while the complainant was at liberty, but on bail, she received from the Adamses the sum of $4,000 in full for the balance remaining due on the contract of sale, and executed a full release of her claims. If this settlement had not been made, complainant would have been shortly thereafter entitled, under the terms of her contract, to about $4,600 (the $5,000 being reduced by the fact that the claims against complainant's share of the estate were about $400 in excess of the $250 stipulated). While the value of the interest of complainant in her deceased husband's estase is somewhat uncertain, we think it may be assumed that it proved to be worth about $11,000.

We agree with the trial judge that there was no conspiracy between the defendant Ritchie, the Stringhams, and the Adamses. The testimony establishes to our satis-

faction that they did not act in concert. The defendants Adams were not interested in any way in the project of Ritchie to acquire this property, nor in the purchase by defendants Stringham from complainant. We agree, too, with the trial judge that defendants Stringham did not practice any fraud upon complainant when they obtained the conveyance of October 22, 1898. We find it unnecessary, however, to determine whether the circumstances surrounding complainant—the fact that she was practically in custody, and was terrorized by the situation—destroyed her capacity to act. If it be assumed that her capacity was impaired to such an extent that she had a right to disaffirm the contract, she lost that right August 5, 1899, by receiving and appropriating its proceeds. On August 5, 1899, complainant was not in custody; she knew that the bargain of October 22, 1898, was an unwise one; she also knew the fact—if fact it was—that that bargain was made when her state of mind deprived her of the capacity to make it; and at this time, we agree with the trial judge, she possessed full capacity to act. If she had a right at this time to disaffirm the contract, she had a right to affirm it, and when she accepted and appropriated its proceeds she made an election which for all time affirmed it. *Bedier* v. *Reaume*, 95 Mich. 518 (55 N. W. 366); *Carroll* v. *Rice*, Walk. Ch. 373; *Merrill* v. *Wilson*, 66 Mich. 232 (33 N. W. 716); *Cobb* v. *Hatfield*, 46 N. Y. 533.

Complainant's counsel indulge in harsh criticism of defendant Adams because in the settlement of August, 1899, he exacted from complainant about $600 as a consideration for his anticipating the time of payment of the balance due her. Whether or not this was an exorbitant charge for the accommodation would depend upon many circumstances, and is a question immaterial to this decision, as in no event would it furnish a reason for setting aside the conveyance theretofore made.

The trial judge did, however, err in determining the amount to be repaid by defendant Ritchie. Ritchie re-

ceived $500, and not $400, as the trial judge determined, to which he had no right.

It results from these views that the decree of the court below should be so modified as to compel defendant Ritchie to pay complainant the sum of $500, instead of $400, with interest at 5 per cent. from October 22, 1898; and in all other respects it should be affirmed, with costs to the defendants Adams and Stringham.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. HOOKER, C. J., did not sit.