ALBRIGHT v. STOCKHILL.

1. FRAUDULENT CONVEYANCES—"BULK SALES LAW," SALES IN VIOLATION OF—VOID AS TO CREDITORS—VALID BETWEEN PARTIES.

   The "bulk sales law" (2 Comp. Laws 1915, § 6346 *et seq.*) was enacted for the purpose of preventing fraud by debtors upon creditors, and a sale made in violation thereof is void only as to creditors, and is valid between the seller and buyer.

2. SAME—FRAUD—RIGHT OF DEFRAUDED PARTY TO RELIEF.

   If in a sale made in violation of the "bulk sales law" the seller has been guilty of any fraud to the injury of the buyer, or if there has been a grossly inadequate consideration, the seller cannot hide behind the statute and thus avoid liability to the buyer.

3. EQUITY—FRAUD—"CLEAN HANDS"—VIOLATION—"BULK SALES LAW."

   In a suit to rescind, on the ground of fraud and failure of consideration, a contract for an exchange of plaintiff's farm for a stock of goods and other property belonging to defendant, without complying with the "bulk sales law," the doctrine of "clean hands" has no application, the rights of creditors not being affected.

4. SAME—GROSS INADEQUACY OF CONSIDERATION.

   Mere inadequacy of consideration, unless it is so gross as to shock the conscience of a chancellor, is not itself a ground on which a contract will be rescinded, and where the consideration failed in part, damages may be awarded to the amount plaintiff is damnified, instead of the contract being rescinded.

5. SAME.

   Where the consideration is so grossly inadequate as to shock the conscience, courts will interfere, although there has been some exercise of judgment by the parties fixing it.

6. FRAUDULENT CONVEYANCES—"BULK SALES LAW," SALE IN VIOLATION OF—VOID AS TO CREDITORS.

   No contract of sale valid as to creditors of the seller can

On effect of misrepresentations in statement seller is required to make as a condition of a valid sale in bulk, see note in 45 L. R. A. (N. S.) 492.

be entered into unless the requirements of the "bulk sales law" are complied with.

7. FRAUD—MATTERS OF OPINION—VENDOR AND PURCHASER.

Mere expressions of matters of opinion as to values, upon which men might fairly and honestly differ, cannot be made the basis of fraudulent representations.

8. SAME—REPRESENTATIONS—EVIDENCE—SUFFICIENCY.

In a suit to rescind a contract whereby plaintiff received, in exchange for his farm, among other property, an electric light plant, testimony in support of plaintiff's claims of fraudulent representations as to cost of operating and income from same, *held*, insufficient to sustain the burden of proof.

9. EQUITY—FRAUD—GROSS INADEQUACY OF CONSIDERATION—EQUITABLE RELIEF.

Where, in exchange for plaintiff's farm, defendant put in as part of the consideration therefor a stock of goods without complying with the "bulk sales law," and without revealing to plaintiff the fact that creditors' claims equaled the value thereof, and to the extent of such value the consideration failed, whether the withholding of such information was intentional or due simply to ignorance of the law, there was such failure of consideration, amounting to gross inadequacy of consideration, as calls upon a court of equity to grant relief.

10. SAME—JURISDICTION—RELIEF.

Although at the time plaintiff filed his bill he was not in position to ask rescission, equity will retain jurisdiction and grant such relief in damages as he is entitled to.

11. SAME—REMEDY AT LAW—FAILURE OF CONSIDERATION—EQUITABLE RELIEF.

The mere fact that the person defrauded might have a remedy at law would not deprive him from coming into a court of chancery and having the agreed consideration, or the value of the premises, declared to be an equitable lien upon the lands.

Appeal from Ionia; Davis (Frank D. M.), J. Submitted April 29, 1919. (Docket No. 23). Reargued November 5, 1919. Decided December 23, 1919.

Bill by Edwin Z. Albright against Amos Stockhill

and others to set aside and rescind an exchange of properties on the ground of fraud. From a decree for plaintiff, defendants appeal. Modified.

*Hawley & Eldred,* for plaintiff.

*Hatch, McAllister & Raymond* and *Ellis & Ellis,* for defendants.

STONE, J. This case is here upon the appeal of defendants from a decree for the plaintiff in the court below. The plaintiff and the principal defendant, Amos Stockhill, traded properties. The bill was filed to set aside and rescind such exchange on the ground of fraudulent representations made by the said defendant Stockhill to the plaintiff, for the purpose of inducing such exchange; and it is claimed that such false representations were successful in inducing the bringing about the exchange of such property. The trade was consummated on March 29, 1917. Under the agreement for exchange the plaintiff was to convey his equity, or interest in a farm in the township of Lyons, Ionia county, consisting of 124 acres, which he valued at the sum of $12,400, subject to an incumbrance of $7,225, together with the personal property on said farm, including livestock, agricultural implements, hay, etc., valued by him at about $2,900, for a grain elevator, warehouses, electric light plant, and implement business and stock in trade connected with and incident to such business and plants, located at Conklin, Ottawa county, belonging to the said defendant Stockhill—the stock in trade consisting of agricultural implements, flour, feed, etc. The value of the real estate, including elevator and warehouses and a small building on railroad property, and the electric light plant, were in the contract at $8,775. In this deal said defendant Stockhill was also to sell and deliver his stock in trade to the amount of $1,500; and

if the stock exceeded in value, upon inventory at cost price, the sum of $1,500, the plaintiff was to pay for the difference in cash, or in promissory notes.

The specific charges of fraud in the bill of complaint are as follows:

"That said Stockhill at said time and place falsely represented, stated and claimed, with the intent to cheat and defraud this plaintiff, that practically the only expenses involved in running the said electric light plant consisted of the fuel used therefor, and that the cost of such fuel would not then and there exceed the sum of $30 per month, and that the income from said plant was at that time the sum of $90 per month."

Also that:

"Said defendant Stockhill falsely and fraudulently stated, claimed and represented to this plaintiff, and in his presence and hearing, that said stock in trade was entirely free from incumbrances, and that the same were fully paid for and that no claims or debts existed against the same."

The bill also charges as follows:

"This plaintiff further alleges that he believed said false and fraudulent statements and representations so made as aforesaid by said defendant Amos Stockhill, and relied thereon and was deceived thereby; that, in reliance upon said false and fraudulent statements and representations, he purchased or exchanged for said grain elevator, electric light plant, agricultural implement business and stocks in trade of the said defendant Stockhill, and gave and delivered therefor his said property aforesaid, and without complying or requiring said Stockhill to comply with the laws of this State, and particularly with the statute known as the 'bulk sales law' of this State, in purchasing or exchanging for said merchandise stock in trade of said defendant Stockhill; that, in truth and in fact, it required at the date of said false and fraudulent representations, to wit, March 28, 1917, at least $55 worth of fuel to run or operate said electric light plant for

the period of one month, and that the income derived therefrom was not the sum of $90 per month and did not average to exceed the sum of $70 per month, and that the same was a losing and not a paying proposition, and that said merchandise stock in trade of said defendant Amos Stockhill, was not on said 28th day of March, A. D. 1917, or at any time during said negotiations fully paid for, and was not free from debt, and that there were bills outstanding against the same, and that the aggregate of said indebtedness against said merchandise stock in trade of said defendant, which was on said 28th day of March, A. D. 1917, due and unpaid was then and there the sum of at least $2,800, and that said creditors of said defendant Stockhill now claim and insist, that this plaintiff is obligated under the laws of this State to pay the full amount of said merchandise bills, and are now claiming and insisting that by reason of his failure to comply with said 'bulk sales law,' that he, this plaintiff, shall and must pay said claims aggregating the said sum of $2,800 and are threatening to sue this plaintiff therefor; that under those circumstances, when this plaintiff was informed that any such bills were outstanding, he called said defendant's attention to the same and requested that he attend to the payment of such bills and relieve plaintiff of any liability therefor, all of which said defendant has failed, refused and neglected to do; that this plaintiff is advised that he may be liable for the payment of such claims unless relieved by the order and decree of this court on account of such fraud practiced upon him by said defendant, and that thereby this plaintiff has been greatly wronged, cheated and defrauded by said defendant Amos Stockhill."

As showing the theory upon which the case was heard in the court below, we quote somewhat at length from the written findings of the learned circuit judge, as contained in the record:

"The testimony of the plaintiff is to the effect that this transaction and exchange was made and entered into by himself and the defendant Stockhill, and that although defendant Emmons was then and there a co-

partner in said business he did not figure in said transaction; that said Stockhill claimed to be the owner of the property, and at the first meeting at Conklin, stated and represented to the plaintiff that the personal property which he proposed to exchange would be free and clear from all incumbrance at that time that such exchange was actually consummated; that on the 29th day of March, 1917, when said exchange was actually consummated and the property delivered from the one to the other, the defendant Stockhill represented that said personal property was free and clear from all and every incumbrance, that there was nothing against it; that the said plaintiff believed such representations and relied upon them in making such exchange, and would not have made such exchange had he not believed said representations.

"A bill of sale was given by Stockhill to plaintiff of the personal property, and contains the following statement:

"'And for the purpose of making this sale to first party hereby represents that the property hereby conveyed is free and clear from all and every incumbrance whatever.'

"It appears upon the trial, from Stockhill's admissions, that the bill of sale was fully understood by him, it having been read over to him carefully. Upwards of $2,200 worth, according to the inventory value thereof, of merchandise, stock in trade and fixtures, was included in this bill of sale. It further appears that at the time defendant Stockhill was indebted upon unsecured indebtedness in the sum of nearly $7,000.

"It is the claim of the plaintiff, in view of this indebtedness and the provisions of the bulk sales law of this State, the representations of defendant Stockhill that this personal property was free and clear from all incumbrance and that there was nothing against it was false and fraudulent and known to the said Stockhill to be so. Plaintiff also claims he had a right to believe and suppose by said representations in such bill of sale that he was obtaining by means of this exchange an absolute title to this personal property.

"Much argument was had upon the hearing of the

effect of the bulk sales law, as to whether it was an incumbrance or not. In that respect I conclude and find that third persons by the way of being creditors under the statute had a right or interest in this property; that they had a paramount right to the plaintiff, and that instead of having an absolute title the plaintiff, in view of the fact that a large indebtedness existed against the defendant and by the admitted conveyance of said personal property, its effect was to make the plaintiff a trustee for the benefit of cerditors and not an absolute owner of the stock free and clear from incumbrance. The ordinary understanding of the word 'incumbrance' would signify that it was a burden, or a right of some third party against the property.

"In this case the defendant Stockhill knew well of his indebtedness to creditors in relation to said stock. It appears from the evidence that plaintiff knew nothing of such indebtedness. In my judgment, he had a right to rely upon such statement of its being free from incumbrance, and in receiving a bill of sale containing this language that he was getting title; that there was no burden imposed upon the same, and that no other parties had superior rights to his. Stockhill was in possession of the facts, the other man was not. As to this there can be no question but that a fraud was committed by the defendant. The only incumbrance that was mentioned as an exception to the representations was a certain real estate mortgage of about $2,700. Stockhill well knew that plaintiff had to rely upon him to ascertain the true condition of affairs.

"It is urged by the defendant that because he was guilty of not having an inventory prepared and requiring a list of the creditors he was guilty of a wrong and therefore could not recover in this case even though Stockhill might have been guilty of misrepresentations. It would hardly do to hold that such would be the law under the circumstances shown in this case. Were both parties in possession of all the facts this rule might obtain. So I find that the contention of the plaintiff has been sustained by the proofs, defendant is guilty of fraud and giving to the plaintiff the right of rescission."

An examination of this record shows that both the plaintiff and the principal defendant Stockhill were men of considerable business experience. They both had a good opportunity to examine each other's property, and apparently both parties were anxious to make the exchange. When they dealt, neither paid any attention to the "bulk sales law," and they both testified that they did not know that there was such a law in existence. We are satisfied that the whole reason and cause of this suit was the fact that the parties neglected to comply with that law. Conceding that there was evidence to support the finding of the learned circuit judge, there is no evidence or claim that any inquiry was made by the plaintiff, or representations made by the principal defendant Stockhill, as to the amount of the latter's debts, or of the debts of Stockhill and Emmons, for Stockhill seems to have represented both himself and Emmons in the deal.

The case seems to have been tried and decided in the court below wholly upon the theory that because defendant Stockhill warranted this property free from all incumbrances as stated in the bill of sale, that that included and satisfied the "bulk sales law." Sections 1 and 3 of the "bulk sales law," being sections 6346 and 6348 of the Compiled Laws of 1915, are so accessible and familiar to all that they need not here be inserted. These statutes have been the law of this State since 1905, and their provisions have been repeatedly considered by this court. The learned circuit judge seems to have been of the opinion that the defendant Stockhill, alone, was responsible for the condition of the parties, and he sought to place them *in statu quo.*

We are met at the threshold of the case with the claim of the defendants that the case is controlled by, and should be disposed of upon the authority of, *Farrar v. Lonsby Lumber & Coal Co.,* 149 Mich. 118, and that

the parties having both acted in violation of the law, the appellee does not come into court with clean hands, and hence cannot prevail. It should be borne in mind that the instant case presents a situation of failure of consideration to the extent of the value of the stock in trade and fixtures sold by defendant Stockhill to the plaintiff. The consideration by reason of the debts existing against the stock in trade and fixtures exceeding their value, is so grossly inadequate as to shock the conscience of a chancellor. The "bulk sales law" was enacted for the purpose of preventing frauds by debtors upon creditors, and the purpose of the act is to protect the creditors. A careful examination of the question satisfies us that the whole trend of our decisions, as well as the decisions of other courts construing statutes similar to ours, is to the effect that the purpose of this and similar acts is to protect creditors, and that a sale made in violation of the statute is void only as to creditors. *Spurr* v. *Travis*, 145 Mich. 721 (9 Ann. Cas. 250) ; *Musselman Grocer Co.* v. *Kidd, Dater & Price Co.*, 151 Mich. 478; *Coffey* v. *McGahey*, 181 Mich. 225, 232; *Squire* v. *Tellier*, 185 Mass. 18 (69 N. E. 312).

Such sale as between the seller and buyer is valid; but if the seller has been guilty of any fraud to the injury of the buyer, or if there has been a grossly inadequate consideration, such as is above described, the seller cannot hide behind the statute and thus avoid liability to the purchaser. What was held in *Farrar* v. *Lonsby Lumber & Coal Co.*, *supra*, is that a sale void as to creditors cannot, as between the parties, be made to operate to give the vendee a lien for the money he has paid. The remedy sought in that case was against the property (or the proceeds of it) sold in violation of the "bulk sales law."

In the case at bar the relief sought by the plaintiff does not affect the rights of creditors of the seller of

the goods, but is aimed at a recovery from the seller of the property in exchange for the goods. Here, confessedly, is a void sale as to creditors of a stock of goods and fixtures, and the plaintiff turned over his farm and the stock thereon in payment. The creditors of the vendor have taken steps to secure their rights. It is conceded that the debts of defendant Stockhill exceed the value of the stock of merchandise and fixtures pertaining to the conducting of said business. The question lies wholly between the vendor and the vendee, and does not affect the creditors at all, and the doctrine that one must come into a court of equity with clean hands in order to obtain relief has, in our opinion, no application here. While we do not think that a case for rescission of the entire contract has been made out by the evidence in the case, still it would be most inequitable to compel the plaintiff to lose the entire value of the stock in trade and fixtures, where the creditors are subjecting such property to the payment of their claims. We do not think that the *Farrar Case* stands in the way of granting some relief to the plaintiff. Of course it is understood that though the purchaser of a stock of goods in bulk did not comply with the "bulk sales law," he does not become liable for all of the debts of the seller, but only for the seller's debts so far as they can be satisfied out of the stock of goods and fixtures of which he is held to be the receiver for the benefit of the seller's creditors. As we have said, this legislation was intended for the protection of creditors. It may be said that the goods, as to his creditors, belong to the seller, and the vendee is a receiver accountable to such creditors for all the goods and fixtures that have come into his possession by virtue of such sale. In other words, the sale was absolutely void as to creditors. Mere inadequacy of consideration, unless it is so gross as to shock the conscience of a chancellor, is not, itself,

a ground on which specific performance of the contract will be refused, or one on which a contract will be rescinded. 9 Cyc. p. 367. The rule has been stated to be that where the consideration is so grossly inadequate as to shock the conscience, courts will interfere, although there has been some exercise of judgment by the parties fixing it. 6 R. C. L. § 86, p. 679. No contract of sale, valid as to creditors of the seller, can be entered into unless the requirements of this statute are complied with.

We have examined this case with great care to determine whether it is one for the rescission of the entire contract; or a case in which the plaintiff shall have relief to the extent that the consideration has failed. As between the seller and buyer, it is as though the title to the stock in trade and fixtures had failed. With the exception of the stock in trade and fixtures, these parties seem to have dealt at arm's length. Both were men of experience in business. The properties were thoroughly examined before the trade was made. The plaintiff not only had the opportunity, but did examine the property which he purchased. When he asked as to the earnings of the electric light plant he was referred to the bookkeeper, who answered his questions. No fault was found by the plaintiff with any portion of the property, except the stock in trade and fixtures, for more than four months after the trade was consummated. He had learned that the statute had been violated. In the meantime plaintiff was in possession of the property purchased, making such changes as he saw fit to make, selling the warehouse, offering the entire property for sale, and finally, when he filed his bill, he made complaint only as to the stock in trade and fixtures, and as to the expense of running the electric light plant.

Upon the hearing there was some testimony offered by the plaintiff tending to show that the other property

which defendant Stockhill traded was not of the value represented by him. Both of the parties had a good opportunity to examine each other's property and to determine what there was in it, and they both took advantage of that opportunity. It is conceded by plaintiff's counsel that the bill of complaint is not broad enough to cover this point, but it is urged that under the practice there is no reason why this court should not amend the bill of complaint in the furtherance of justice. We recognize the rule that counsel here suggests, but we are of the opinion that under the evidence there were no such representations as to the value of the property made by the defendant Stockhill as in any way tended to the prejudice of the plaintiff. The plaintiff was a man of affairs and exercised his own independent judgment, as shown by the evidence in the case. The mere fact that Stockhill had listed the property at a lower price would not preclude him from increasing the price in the case of a trade; and the statement as to the value of the property would not be such a false representation as could be made the basis of a rescission of the contract. Mere expressions or matters of opinion as to values, upon which men might fairly and honestly differ, cannot be made the basis of fraudulent representations. *Collins* v. *Jackson,* 54 Mich. 186; *Buxton* v. *Jones,* 120 Mich. 522; *Hammer* v. *Martin,* 205 Mich. 359, and cases there cited; 20 Cyc. p. 52.

Upon the other question as to the representation of the cost of operating the electric light plant and the income from the same, the evidence does not support the claim of the plaintiff and he has not sustained the burden of proof in that regard. What we have just said does not apply to the sale of the stock in trade and fixtures connected with the business. While the condition existing as to the debts of the seller did not make such an incumbrance upon the property as to

violate the clause in the bill of sale, that it was free from incumbrance, yet, in a sense, it may be said, and as would doubtless be understood by laymen, the title to the property was not clear as to creditors, and the defendant Stockhill could not convey title to it to the plaintiff to the injury of the former's creditors. In any view of the case, we come back to the proposition that as to the debts of defendant Stockhill and their relation to the stock in trade and fixtures, the facts were not disclosed to the plaintiff. Whether the withholding of this information of the amount of defendant Stockhill's indebtedness was intentional on his part, or was withheld simply in ignorance of the law, the fact still remains and cannot be controverted, that there has been as to the stock in trade and fixtures such a failure of consideration, amounting to gross inadequacy of consideration, when the whole trade is considered, as calls upon a court of equity to grant the plaintiff some relief.

We do not think the plaintiff, when he filed his bill, in view of all his conduct with reference to this property, was in a condition where he could properly ask a court of equity to rescind the entire contract; but we do think that he was in a position, upon the facts stated and evidence introduced relating to the stock in trade and fixtures, to ask some relief from the court; and we think the court should retain jurisdiction and grant such relief. It is conceded by defendant's counsel that, if the plaintiff paid out money for Stockhill and Emmons, he might in an action at law collect it as money paid for the use of Stockhill, or he might recover it of Stockhill as a balance, under the facts, due him on the sale. We do not think it is necessary to send the plaintiff into a court of law for this relief. The stock in trade and the fixtures constitute an entire loss to the plaintiff. We take it that there is no question about that, as to the amount. If there is any

question, it can be settled by an accounting in this case upon a remand to the circuit to take further proof. To the extent that plaintiff has suffered and been damnified, or shall be damnified, he is entitled to relief against the defendant Stockhill and may have a lien for such sum upon the farm in Ionia county. *Carroll* v. *Rice,* Walk. Ch. 373; *Merrill* v. *Allen,* 38 Mich. 487; *Merrill* v. *Wilson,* 66 Mich. 232; *Lefevre* v. *Chamberlain,* 228 Mass. 294 (117 N. E. 327).

We invite especial attention to the rule as stated in *Merrill* v. *Allen, supra,* where it is held that the existence of a legal remedy will not prevent resort to equity to have the agreed consideration, or the value of the premises out of which the complainant had been cheated, declared an equitable lien on the lands sold. It is there said:

"The mere fact that the person defrauded might have a remedy at law would not deprive him from coming into a court of chancery and having the agreed consideration, or value of the premises, declared to be an equitable lien upon the lands."

Here, under the general prayer for relief, we have no doubt of the power of the court of equity, and of this court, to grant relief to the plaintiff to the extent that he has been damnified, or will be damnified by reason of the failure of the consideration as to the stock in trade and fixtures.

In *Merrill* v. *Wilson, supra,* where fraud had been practiced by the defendant, and the plaintiff, by reason of his dealing with the property, was not in position to ask rescission, this court held that he was entitled to enforce a vendor's lien for the unpaid purchase money, his bill stating a case upon which such relief could be based.

The case should go back to the circuit court, in chancery, and evidence should be taken showing the value of the stock in trade and fixtures connected with

the business, and the extent to which the plaintiff had been damnified, or shall be damnified by payment, by reason of the suits in garnishment, or otherwise, against him as receiver for this stock of goods and fixtures; and he should have a decree for that amount, which should stand as a lien against the said farm in Ionia county, and in the nature of a vendor's lien.

Questions as to the claimed exemption of any portion of this property, if such are involved, can be disposed of in such accounting. We express no opinion upon the subject of exemptions from execution of any part of this property, as the subject has not been briefed or argued, but the question may be dealt with in the accounting. *McCormick* v. *Kistler*, 175 Mich. 422 (45 L. R. A. [N. S.] 497).

The injunction granted in the 11th paragraph of the decree below as to selling, incumbrancing, mortgaging, or otherwise disposing of the said defendant Stockhill's interest in the farm in Ionia county will be continued in force.

A decree will be entered in accordance with this opinion; and as neither party has fully prevailed in his claim, no costs will be allowed in either court, but each party shall pay one-half the expense of printing the record. Decree below modified.

BIRD, C. J., and SHARPE, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.