SHULTZ *v.* McCARTY.

1. APPEAL AND ERROR—EQUITY—DUTY OF SUPREME COURT TO WEIGH EVIDENCE.

While on appeal in equity case due weight should be given to advantage which trial judge had in seeing and hearing witnesses, Supreme Court is not thereby relieved from duty of exercising its own judgment in passing on weight of evidence.

2. EXCHANGE OF PROPERTY—RESCISSION—FRAUD.

That plaintiffs, in exchange of properties, made unfortunate investment, would not entitle them to equitable relief of rescission, unless they were defrauded.

3. SAME—FALSE REPRESENTATIONS.

Where defendant's books showed that, for several months previous to its sale, theater was being operated at profit represented, said representation may not be found to be false because previous to that time it had been operated at loss.

4. SAME—BOOSTING VALUES FOR TRADING PURPOSES.
> Where plaintiff was experienced in valuing properties, looked over property he was to receive several times, and was not deceived by price represented as its value, he is not entitled to rescind contract for exchange on ground of fraud, although price was boosted somewhat for trading purposes; price fixed on his property being of same kind.

Appeal from Kent; Brown (William B.), J. Submitted January 9, 1931. (Docket No. 77, Calendar No. 35,390.) Decided February 27, 1931.

Bill by John G. Shultz and another against Nathan L. McCarty and another for rescission of a contract to exchange parcels of real estate. Decree for plaintiffs. Defendants appeal. Reversed.

*Richard L. Newnham* (*John J. McKenna*, of counsel), for plaintiffs.

*Eerde W. Hoogsteen* (*Frank Post*, of counsel), for defendants.

SHARPE, J. On October 23, 1929, the plaintiff Mrs. Schultz conveyed a lot on which was a three-family flat building and a vacant lot, in the city of Grand Rapids, to the defendants, and received in exchange therefor an assignment to the plaintiffs of the equity of the defendants in the Galewood Theater property in that city. On November 30th following, the plaintiffs filed the bill of complaint herein, alleging fraudulent representations as to the value and income of the theater property, and praying for rescission of the contract and the restoration of the property conveyed. They had decree as prayed for, and defendants have appealed therefrom.

Plaintiffs' attention was first called to the theater property by an advertisement inserted in a Grand Rapids paper on October 12, 1929, reading as follows:

"Theater for sale or trade for income property in the fastest growing suburb of Grand Rapids, brick and concrete construction, is operating at a good profit. Good place for party that likes theater work. Call 78879."

Mr. Shultz called up the number given and talked with Mr. McCarty, and, as a result thereof, the plaintiffs drove to the theater and there met McCarty. He showed them about the theater, in which moving pictures were then being exhibited, and a restaurant attached thereto. He informed them that he had an equity of $14,000 in the property, and that there was $23,700 unpaid on the contract. A few days later, they again visited the theater, and McCarty, in answer to a question, said that the theater "was making from $50 to $75 a week beyond its expenses." Soon thereafter, the defendants looked over the flat building and the lot, and the deal was consummated by an exchange of conveyances on October 23d. Plaintiffs took possession of the theater a few days later, and operated it until December 2d. On December 13th their attorney wrote Mr. McCarty, informing him that they repudiated the contract, and that he could take possession of the theater. No tender of the key was made to him. This suit was commenced, as before stated, on November 30th.

While this court always gives due weight to the advantage which a trial judge has in seeing and hearing the witnesses, we are not relieved thereby from the duty of exercising our own judgment in passing upon the weight of the evidence in the case. *Emery* v. *Emery*, 181 Mich. 146; *Oliver* v. *Baldwin*, 201 Mich. 336.

The plaintiffs have doubtless made a very unfortunate investment, but, unless defrauded by the defendants, they are not entitled to the relief sought. McCarty admits that he said to plaintiffs that his

profit in operating the theater was from $50 to $75 per week. He purchased the equity in this property in January, 1929. He ran it about two months, and then leased it. He took it back in May, 1929, and, while it made no profit for a time, his books, put in evidence, show that it was operated at the profit stated for several months before the sale to plaintiffs.

While the plaintiffs claim they sustained a loss during the time they operated it, the evidence discloses a reason therefor. They had no experience in handling such property; at times neglected to heat it properly; at one time advertised in front of the building that a certain picture was being exhibited when, in fact, it was not, and otherwise conducted it in a manner that lost the public support on which its success depended. Mr. Shultz testified:

"I made up my mind that I had been defrauded and went to see a lawyer about a week after I got the theater * * * ;" that he "did not make any more money than enough to cover the expenses,"—

and yet he admitted that he told McCarty that he was making a profit, and in an attempt to sell it he stated to one man that "it was a good paying proposition," and to another that "it was paying between 50 to 75 dollars a week." His excuse for making such statements is that "I didn't want to let anybody know that I was stung." It also appears that he advertised the property for sale in a Grand Rapids paper on November 11th, 12th, and 13th as a "Community theater in fast growing suburb, operating under good profit," and that on November 22d he listed it for sale with the defendant McCarty. This evidence, when fairly considered, does not warrant a finding that the statement made by McCarty to the plaintiffs that the theater was being operated at a profit was untrue.

Shultz also testified that McCarty stated to him that he had $14,000 invested in the property, and it is urged that this statement was untrue and was made with intent to deceive the plaintiffs, and was relied on by them. This sum, added to the amount then due on the land contract, amounted to about $38,000. Mr. Shultz testified that he had theretofore had experience in placing values upon property; that he looked the theater property over several times before he bought it.

"Q. And when you bought it you bought it for $38,000, didn't you?

"A. Yes, sir.

"Q. And you thought it was worth it at that time, didn't you?

"A. No.

"Q. Why did you buy it if you didn't think it was worth it?

"A. Well, I bought it because I figured the business would pay for it.

"Q. Then it would be worth it?

"A. No.

"Q. Well, you bought something that was not worth it, business and all included?

"A. Yes, sir."

McCarty also admits making this statement, and offered proof of the truth thereof. He made the deal for it with a man named Crothers. Crothers testified that he got the property in a trade, paying therefor about $33,500, and that he added $2,076.95 in its equipment; that he "sold it to McCarty * * * in a trade, partly trade and partly cash for $36,000."

McCarty testified that he paid Crothers $1,500 in cash, transferred to him a house and lot valued at $8,500, and two lots valued at $1,000; that he reduced the amount due on the contract by payment of $1,300, and that he added improvements and equipment to the theater of the value of $1,652.80.

These sums make a total of $13,952.80. While the values placed upon these properties were no doubt what is called "trading" values, it must be borne in mind that the values placed by the plaintiffs on their properties were also of the same kind. In *Albright* v. *Stockhill,* 208 Mich. 468, 479 (a case similar in many respects to that before us), this court said:

"Both of the parties had a good opportunity to examine each other's property and to determine what there was in it, and they both took advantage of that opportunity. * * * Mere expressions or matters of opinion as to values, upon which men might fairly and honestly differ, cannot be made the basis of fraudulent representations."

The applicable rule is also clearly stated in *Oliver* v. *Baldwin, supra* (syllabus):

"Canceling an executed contract is an exertion of the most extraordinary power of a court of equity, and ought not to be exercised except in a clear case, and never for an alleged fraud unless the fraud be made clearly to appear; never for alleged false representations unless their falsity is certainly proved, and unless the plaintiff has been deceived and injured by them."

In our opinion no such fraudulent representations were made as warranted the decree for rescission. The conclusion thus reached renders it unnecessary to consider the question of the affirmance of the contract by plaintiffs after having ascertained the facts on which they now rely for rescission.

The decree appealed from is reversed and set aside, and one may be here entered dismissing the bill of complaint, with costs of both courts to the defendants.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.