KOKX *v.* BUECHELE.

1. APPEAL AND ERROR—RECORD—TRANSCRIPT—OPINION—REFORMATION OF INSTRUMENTS.

The Court of Appeals must look to the record and transcript and the trial court's opinion to see whether plaintiffs' or defendants' position with respect to reformation of a deed is sustained.

2. REFORMATION OF INSTRUMENTS — CONTRACTS — DEEDS — MUTUAL MISTAKE — EQUITY.

Courts do not make contracts for parties, and while a parol agreement lies in back of almost every written instrument, it becomes merged therein and the writing controls unless a court of equity finds, from clear and satisfactory evidence, that as the result of mutual mistake, the writing does not express the agreement actually made by the parties.

3. SAME—BURDEN OF PROOF—EVIDENCE.

Burden of establishing mutual mistake in execution of written agreement lies upon party seeking reformation thereof.

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 491 *et seq.*
[2] 45 Reformation of Instruments §§ 5, 55.
[3] 45 Am Jur, Reformation of Instruments § 112.
[4] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*
[5] 5 Am Jur 2d, Appeal and Error § 880 *et seq.*
[6] 45 Am Jur, Reformation of Instruments § 123.

4. APPEAL AND ERROR—COURTS—CHANCERY CASES—EVIDENCE.

Heavy reliance is placed upon findings of trial court in reviewing chancery case *de novo* because of its superior opportunity to. observe witnesses, but the Court of Appeals has power and duty to reverse where, upon review of entire record, it finds it would have reached the opposite conclusion had it heard the testimony.

5. SAME—WITNESSES—DEMEANOR.

Actual words spoken by witnesses must, in the long run, be determinative of a case, even though their demeanor is often probative.

6. REFORMATION OF INSTRUMENTS—DEEDS—INJUNCTION—EVIDENCE.

Reformation of deed by trial court reversed and matter remanded for judgment enjoining plaintiffs' further use of defendants' property, where Court of Appeals finds, from complete review of record, that plaintiffs' own testimony precludes reformation sought by plaintiffs and establishes defendants' right to such injunction.

Appeal from Newaygo; Van Domelen (Harold), J. Submitted Division 3 December 6, 1966, at Grand Rapids. (Docket No. 1,418.) Decided April 25, 1967.

Complaint by Myron Kokx and Mayme Kokx against Pierce Buechele and Helen Buechele to enjoin defendants from barring use of a portion of defendants' property as ingress and egress to adjoining land of plaintiffs and for reformation of a deed between the parties. Cross complaint by defendants to enjoin plaintiffs' further use of defendants' land and for other relief. Judgment for plaintiffs. Defendants appeal. Reversed and remanded for entry of judgment on cross complaint.

*J. Donald Murphy,* for plaintiffs.

*Paul L. Greer,* for defendants.

FITZGERALD, J. Plaintiffs Kokx brought an action in 1965 to enjoin defendants Buechele from barring ingress and egress to plaintiffs' property which was reached by using a part of defendants' property after crossing a bridge bordering M–82 in Newaygo county adjacent to the Buechele property. The parties had entered into a six-month lease of the premises in question in 1957 in which the plaintiffs as lessees were granted the right to ingress and egress in the following language:

"The N1/2 of the NE1/4 of the SW1/4, and also the NW1/4 of the SW1/4 of section 19, township 13 north, range 14 west, reserving all buildings thereon, except the barn, and granting egress and ingress to the lessees to said barn, including a strip 25 feet north and south by 24 rods east and west, running from the highway along the south side of the barn."

Also included in the lease was a right to purchase the land in the following language:

"Lessors herein also grant to the lessees herein an option to buy the land herein leased, at $75 per acre, to be paid in cash at any time during the term of this lease."

The lease was extended and the option to purchase the land was exercised by the plaintiffs about a year later. The deed, however, delivered by defendants to plaintiffs contained no expressed provision for ingress and egress to the property granted.

Over the course of years, defendants erected a number of barricades to prevent plaintiffs from crossing the bridge, such as driving stakes in the ground, sinking a 50-gallon hot water heater, placing their car across the road and pouring loads of sand in the way to render passage impossible.

The plaintiffs' complaint sets forth that it is necessary for them to use the bridge to reach the property

purchased by them. Defendants,. in answer and cross-complaint, denied that at the time the property was sold to plaintiffs there was an agreement whereby plaintiffs could cross the bridge and denied any mistake in the drafting of the deed. They allege damage to the property and a garbage nuisance condition created. by plaintiffs' hog-raising operation and asked for an injunction restraining plaintiffs from coming upon the land owned by defendants.

Following hearing, the trial court held in favor of the plaintiffs and granted them an easement of ingress and egress over defendants' land and reformed the deed accordingly. Following entry of. judgment, appeal was claimed.

It is the contention of appellant-defendants that the plaintiff did not produce clear and convincing evidence sufficient to reform the deed on the theory of a mutual mistake so as to provide for the inclusion of a right of ingress and egress across defendants' property when the deed clearly omitted such a provision. Plaintiffs, on the other hand, state that clear and convincing evidence calls for the reformation of the deed so as to contain the easement in question.

It is to the record and transcript and the trial court's opinion that we must look to see which position is sustained. The transcript shows that as the land stood at the time of institution of suit there was no totally satisfactory alternative route of access to the land plaintiffs had purchased from defendants, but that a route could be built for about $600.

Evidence of an express agreement concerning access prior to the making of the deed is not conclusive from the record. Plaintiffs claim there was such an agreement; defendants allege that they agreed only to a temporary easement and that plaintiffs agreed to build their own access bridge over their own land.

Immediately prior to making the deed, the defendants agreed to allow plaintiffs to cross the bridge and turn sharply left onto plaintiffs' own property and a gate was constructed in the fence along their common boundary for this purpose with defendants' approval.

In the trial court's order permanently restraining the defendants from interfering with plaintiffs' use of the bridge, the court stated:

"It is the finding of this court that the provision for access was in the lease-option agreement and constituted a valuable inducement for the plaintiff to purchase the land, that the parties at all times agreed and intended that plaintiff was to have access to said land and the barn thereon, that the drawing, execution, and delivery of the deed without the grant of access over the bridge and the established drive was a mutual mistake contrary to the intention of the parties; that the conduct and declarations of all the parties at all times in reference to the lease, purchase and execution and delivery of the deed, and all the circumstances surrounding these transactions prove to the court by a preponderance of the evidence that it was the intention of the parties that the plaintiff should have access to this land over the bridge across the corner of defendant's land on the drive constructed by plaintiff and through the gate as located."

It is necessary that the case be kept in its proper context: The plaintiffs purchased land to which there existed only one really practicable means of access and the parties had previously bargained in the lease for a way of ingress and egress. The record shows that other access routes existing at the time were in bad condition during certain seasons of the year.

We have before us a case in which the Court, if it is to rule in favor of plaintiffs, must make a contract

for the parties. The case of *Lee State Bank* v. *Mc-Elheny* (1924), 227 Mich 322, dealing with reformation of a mortgage, contains the following statement:

"Courts do not make contracts for parties, and this truism has given rise to the cautionary rule requiring clear and satisfactory evidence of a mutual mistake before reforming a written instrument. Back of nearly every written instrument lies a parol agreement, merged therein, but the writing controls unless a court of equity, on invocation of its power, finds that the writing does not express what the minds of the parties met on, and intended, and supposed they had expressed, but which miscarried by mutual mistake."

In applying the general principles set down, *supra,* it is obvious that plaintiffs carried the burden of proving a mistake and that the mistake was mutual. *E. R. Brenner Co.* v. *Brooker Engineering Co.* (1942), 301 Mich 719. The omission supplied in the reformation must be indicative of the real intent of the parties.

In reviewing a chancery case *de novo* as we do, while heavy reliance is placed upon the findings of the trial court because of its superior opportunity to observe the witnesses, there comes the occasional case which upon a complete review of the record we can say that we would have reached the opposite conclusion, had we heard the testimony. *Shultz* v. *McCarty* (1931), 253 Mich 445.

Specifically, following the putting in of the proofs of both sides, an examination of plaintiff was conducted by the court in an effort to reconcile the conflicting testimony. The following excerpts we feel are pertinent:

"*The Court.* Mr. Buechele testified that at the time the lease was made that there was a discussion, I believe, about ingress and egress to this property—

"*A.* (by Mr. Kokx) Right.

"*The Court.* Do you remember that?

"*A. He told me several times that I had to build a bridge, and I never thought that I had to.* (Emphasis supplied.)

"*The Court.* Well, now, he said that at the time the lease was drawn that there was a discussion that this ingress and egress of the bridge was merely temporary. Do you recall that?

"*A.* No, I don't.

"*The Court.* Do you recall whether or not there was any discussion about the ingress and egress being either temporary or permanent?

"*A.* No. *We just had the right of ingress and egress, and I just figured it was permanent.*" (Emphasis supplied.)

Further in the examination, the court explored the posture of the situation at the time the deed was drawn and during the ensuing months.

"*The Court.* Now, at the time that the deed was drawn do you recall whether or not there was any discussion?

"*A.* Nothing mentioned about it that day.

"*The Court.* Do you have any explanation as to why something isn't in the deed?

"*A.* (No answer.)

"*The Court.* About the ingress and egress?

"*A.* Oversight. *Ah, automatically expect ingress and egress to property when you buy property, don't you?* (Emphasis supplied.)

"*The Court.* Was it discussed at the time the deed was drawn?

"*A.* No.

"*The Court.* Never discussed. I believe the testimony was before that as soon as the survey was made that you put up the fence?

"*A.* Right.

"*The Court.* Now, and—

"*A.* And we didn't use the driveway a year and a

half after the thing was surveyed. We didn't use it at all.

"*The Court.* Now, you stated that at the time you put up the fence, did you put the gate in by the road?

"*A.* Right.

"*The Court.* The gate had been in there ever since the fence was up?

"*A.* Ever since the fence was built.

"*The Court.* Now, did you and Mr. Buechele have a discussion at that time as to—

"*A.* Where the gate was to be placed.

"*The Court.* I see. Did you have a discussion as to whether your entrance there was to be temporary or permanent?

"*A. He told me so many things I just didn't pay no attention to him. I went ahead and put the gate in and kept on using it.* I checked with the highway department to find out about the bridge, and he said the bridge was put there to serve all that piece of property no matter who owned it." (Emphasis supplied.)

We find this testimony by plaintiff conclusively disserving to his cause. In effect, by his own admission, the mistake, or at least the mistaken surmise, was on his part. The demonstration in the record of the conduct of defendant Buechele in seeking to block the entrance over the years is certainly inconsistent with any intention or approbation that the bridge should be used as a permanent route of ingress and egress.

While demeanor of witnesses is often probative, it is the actual words spoken by them which must in the long run be determinative. Accordingly, we feel that the relief prayed for by plaintiffs in the original complaint should not be granted.

Reversed and remanded for the entry of an order denying the relief prayed for by plaintiffs, reinstating defendants' cross-complaint for the purpose of

granting them adequate relief to enjoin plaintiffs from coming upon defendants' land.

Costs to appellants.

QUINN, P. J., and HOLBROOK, J., concurred.