ENGLE *v.* ENGLE.

1. SPECIFIC PERFORMANCE — ORAL CONTRACT FOR CONVEYANCE OF LAND—MUST BE CLEAR AND COMPLETE.

A court of equity will not grant specific performance of an oral contract to transfer real estate unless the terms of the contract are clear and complete so that no reasonable doubt can exist respecting the enforcement of it according to the understanding of the parties.

2. SAME—CONTRACTS—EVIDENCE—SUFFICIENCY.

In a suit for specific performance, evidence examined, and *held*, sufficient to establish the making of the contract as claimed by plaintiff, viz., that he was to have a farm belonging to his father's estate, and defendant, his brother, was to have the personalty.

3. SAME.

Evidence *held*, sufficient to establish the fact that defendant wife was a party to the agreement and gave her assent thereto.

4. SAME—INADEQUACY OF CONSIDERATION—FRAUD.

While specific performance of an oral contract to convey land rests in the legal discretion of the court, a court of equity should not decline to grant it because of inadequacy of consideration or because it is unfair and inequitable, unless its enforcement will operate as a fraud upon the rights of defendants.

5. SAME—DIVISION OF INHERITED PROPERTY BY AGREEMENT FAVORED BY COURTS.

Compromises and divisions of property thereby reached after the death of a parent are favored by courts of equity.

6. SAME—INADEQUACY OF CONSIDERATION—KNOWLEDGE OF VALUE—FRAUD.

Where defendants, in agreeing to deed to plaintiff a farm belonging to the father's estate, while they were to take the personalty, were in no way deceived as to the inadequacy of the part of the estate they agreed to accept when compared with the whole, and said division was assented

to for more than two years, specific performance will not be refused on the ground of inadequacy of consideration.

7. SAME—FRAUDS, STATUTE OF—ORAL CONTRACT FOR CONVEYANCE OF LAND—PART PERFORMANCE—PROOF—SUFFICIENCY.

Proof that defendants took possession of the personalty and converted it to their own use, and that plaintiff took possession of the farm, put in crops, and made considerable improvements thereon, in pursuance of said contract, *held,* sufficient as to part performance to relieve from the effects of the statute of frauds under the rule applicable thereto.

Appeal from Kent; McDonald (John S.), J. Submitted January 21, 1920. (Docket No. 53.) Decided February 27, 1920.

Bill by William Engle against Eugene Engle and another for the specific performance of a land contract. Defendants filed a cross-bill for an accounting. From a decree for plaintiff, defendants appeal. Affirmed.

*C. Sophus Johnson* and *M. Thomas Ward,* for plaintiff.

*Smedley & Linsey* and *Roland M. Shivel,* for defendants.

SHARPE, J. The trial judge filed an opinion, in which he stated the facts in dispute and his conclusions thereon as follows:

"The object of this bill is to enforce specific performance of a parol agreement by the heirs for the division of an estate. The plaintiff, William Engle, and the defendant, Eugene Engle, were the sole heirs-at-law of John Engle, who died in January, 1916. The defendant, Jennie Engle, is the wife of Eugene. The plaintiff claims that after the father's death he and his brother Eugene Engle and Jennie Engle made an agreement as to the division of the property, which consisted of real estate and personal property. That

by the terms of this agreement plaintiff was to have a conveyance of the real estate, and defendant was to have the personal property. That in pursuance of the agreement he went into possession of the land, cleared up twelve acres and made other improvements, and paid the taxes from year to year. That the defendant Eugene Engle took possession of the personal property, consisting of grain, money and stock, and has sold or disposed of the greater part of it. That thereafter trouble arose between the brothers and defendant's wife refused to sign the deed conveying her dower interest in the real estate.

"The defendants deny that Jennie Engle was a party to any contract between her husband and William. They claim that when the father died he was indebted to Eugene in the sum of eleven hundred dollars, and that a part of the consideration for the deed of the real estate to William Engle was that he was to pay Eugene one thousand dollars of this indebtedness. Defendants also claim that the contract for the division of the estate was procured through fraud and coercion on the part of William. They admit that he has had possession of the farm since 1916, and in their cross-bill ask for an accounting.

"In my judgment, the testimony clearly establishes the fact that the contract was made as plaintiff claims. That is, that Jennie Engle was a party to it, and that he was to have the real estate and the defendants the personal property. It is also clear that no fraud or coercion was used in procuring the contract."

He concluded that there was such part performance of the oral agreement as rendered it enforceable, and decreed specific performance thereof. The defendants appeal. It is their claim:

(1) The contract is not clearly proven.

(2) Specific performance cannot be decreed as against defendant Jennie Engle.

(3) The contract as claimed is unequal and unreasonable, and specific performance is clearly inequitable.

(4) There was no consideration to support the contract.

(5) There was no sufficient performance to relieve from the effect of the statute of frauds.

1. Counsel are agreed that a court of equity will not grant specific performance of an oral contract relative to the transfer of real estate unless the terms of the contract are clear and complete so that no reasonable doubt can exist respecting the enforcement of it according to the understanding of the parties.

The defendant Eugene admits that such a contract was made between him and William. They only differ in whether William was to pay him $1,000 of the indebtedness of $1,100 he claims his father owed him at the time of his decease. About two weeks after the father's death, William signed a petition to the probate court, asking that Eugene be appointed administrator of the estate. On May 22, 1916, an inventory was filed by Eugene as administrator, in which he listed the real estate, valuing the same at $4,000, and stated that the value of the personal property, not listed, was $1,000. Appended to this inventory, and signed by both Eugene and William, was the following:

"We, Eugene Engle and William Engle, the only heirs in the above estate, agree to the foregoing inventory and request that it be accepted as the appraisal in this estate, as we desire to divide the property between us by mutual agreement."

Judge Higbee, of the probate court, testified as follows:

"Q. Did they come to you with reference to a settlement of the estate of John Engle, deceased?

"A. Yes.

"Q. Was there some agreement made between the two brothers as to a division and settlement of that estate?

"A. They told me they had made an agreement.

"Q. What did they tell you the agreement was?

"A. Why, it seems that there was some one piece of property that had been deeded in the lifetime of their

father in escrow to one of them. The one to whom this farm had been deeded was to receive the personal property, and the other was to receive the real estate of which the father died seized. They asked me what would be necessary to carry their agreement into effect. I told them that the estate of their father would have to be probated, and that after the order assigning the residue had been made to the two heirs, that then they could carry out any agreement between themselves that they saw fit, and they were particularly anxious to know what it would cost. I told them that if it were a matter that was perfectly agreeable between them, the only expense would be the publication fees and a copy of the order assigning the residue, probably around five dollars.

"*Q.* Is that the substance of your entire conversation?

"*A.* Yes; it took much longer than I am telling. They were there, I think, oh, an hour or so, perhaps."

On cross-examination, he was asked:

"*Q.* Do you know what the son Eugene claimed was due from the estate of his father?

"*A.* There was no talk of that, at least when this proceeding was talked of, none originally when they first came in. I never heard anything of it.

"*Q.* Don't you recall that Eugene claimed that he had $1,100 due from the estate that his father owed him?

"*A.* No, I do not."

Robert E. Springett, an attorney at Lowell, who prepared the inventory and the note appended thereto, testified that the brothers came to him after their father's death and talked about the division of the estate and the agreement they had made as to how the property was to be divided. On being asked to give the substance of this conversation, he said:

"There was certain land that Will was to have, and Gene was to have the personal property."

It further appears that Eugene filed his final account on October 8, 1918, in which he charged himself

with receipts from personalty, $871.18, and disbursements of $14.80. William at this time gave Eugene the following receipt:

"GRAND RAPIDS, MICH., October 8, 1918.
"Received of Eugene Engle, administrator of the estate of John Engle, deceased, one dollar and other property in full of my share of the estate, in full settlement of all claims against said administrator, and I do hereby consent to his discharge as such administrator.

"WILLIAM ENGLE."

The probate judge then made an order, reciting that all debts, etc., had been paid and that the 136 acres of real estate remaining be assigned to Eugene and William, each an undivided one-half thereof.` Following this, John Dalton, the register of probate, prepared a deed from Eugene and his wife to William of the 136 acres. In answer to a question, Dalton said:

"Eugene took the deed. As regards the deed, the substance of the conversation was that Eugene was to take the deed and have his wife sign it."

As to this deed, Eugene testified:

"Q. Now, you took that deed home to have it signed?
"A. Yes, sir.
"Q. Had you had your thousand dollars then?
"A. No, sir.
"Q. And still you took that deed home to get your wife to sign it, didn't you?
"A. I took the deed, yes.
"Q. And you were not going to get your thousand dollars then, either, were you?
"A. Why, no; I couldn't get nothing from him.
"Q. And still you took the deed and agreed at that time?
"A. I couldn't get nothing from him.
"Q. And you agreed at that time to give him the deed?
"A. Well, I was going to let him have it; there was no agreement made."

Several other witnesses testified as to statements made by Eugene and his wife that he was to have the personalty and William the farm. We cannot but find beyond a reasonable doubt that the terms of the contract as claimed by the plaintiff were specifically agreed upon between Eugene and himself.

2. Was Jennie, the wife of Eugene, a party to such agreement? Both she and her husband testified that she never assented to the agreement for a division of the property as claimed by plaintiff. Henry Parker, John Aussiker, and Edwin F. Straub all testified that Jennie said to them that Eugene was to have the personalty and William the farm. Jennie admits that Eugene and William talked in her presence about the division of the property, and she claims that William used insulting language toward her when she made some suggestion concerning it. On cross-examination, she said:

"Q. You knew that Eugene and Will had come down here to settle up this estate, on October 8, didn't you?

"A. Yes, sir.

"Q. Eugene came home and he had that deed in his pocket, didn't he?

"A. Yes, sir.

"Q. Now, hadn't you heard about the division of the property like that before October 8?

"A. That Eugene was to have the money and the personal property.

"Q. Eugene was to have his money and the personal property, and Will was to take the real estate?

"A. Yes, sir.

"Q. That was the agreement, wasn't it?

"A. Yes, sir.

"Q. And that is the way you understood it?

"A. Yes, sir.  *  *  *

"Q. Yes, and you knew the whole deal, didn't you?

"A. Yes, sir."

She also testified that she knew plaintiff was living on the farm and had cleared some of the land and

was working it and that her husband had put in some crop there of which plaintiff was to receive a part. We feel constrained to agree with the trial judge that this defendant yielded her assent to the contract as made between these brothers and that the acts of part performance on the part of both of them were in reliance thereon. The action of her husband after the estate was closed in submitting the deed to her for her signature is strongly confirmatory of his understanding of the matter.

3, 4. Was the consideration so grossly inadequate and the contract so unfair and inequitable that specific performance should not be decreed? The right to such relief is within the legal discretion of the court, but a court of equity should not decline to grant it for either of the reasons stated unless the facts justify the conclusion that enforcement of the contract will operate as a fraud upon the rights of the defendants. As was said in *VanNorsdall* v. *Smith,* 141 Mich. 355:

"Mere inadequacy of consideration, not accompanied by other elements of bad faith, is not a sufficient ground for rescission of a contract or for refusing specific performance of it, unless so excessive as to furnish satisfactory evidence of fraud. Fraud is always a sufficient ground for refusing specific enforcement, and inadequacy of consideration may be, with other facts and circumstances, convincing evidence of fraud."

Eugene became the owner, by the delivery of the deed deposited in escrow, of one of his father's farms at his death. While it is his claim, and there is nothing in the record to dispute it, that he had furnished the money with which the father purchased this farm, the fact that he had it, and William none, may have had much influence over the minds of defendants in concluding to make the division as agreed upon. Compromises and divisions of property thereby reached after the death of a parent are favored by courts of

equity. While under the proofs it is apparent that the defendants agreed to part with their interest in this real estate for much less than its fair value, it is also apparent that they were in no way deceived as to the inadequacy of the part of the estate they agreed to accept when compared with the whole. The division was assented to for more than two years, and we cannot but conclude from a reading of the record that it would have been carried out but for the advice of others. We have examined the many authorities cited by counsel for defendants. We do not find them controlling where an amicable arrangement is made by the heirs of an intestate as to a division of his property. Frequently, the apparent necessities of one heir cause the others to conclude that he should as a matter of fairness, not of legal right, receive a greater share than the others. This was a matter of family arrangement, and, as the defendant Eugene was willing to carry it out when the deed was prepared in 1918 and submitted the deed to effectuate such purpose to his wife, we do not think specific performance should be refused for the reasons stated.

5. Was there sufficient part performance? After the agreement was made, Eugene took possession of, and converted to his own use, practically all of the personalty. William took possession of the farm, put in crops, and made considerable improvements thereon. These facts the defendants concede by asking for an accounting and division in that part of their answer in the nature of a cross-bill.

We have not overlooked the claim of defendants that William was in possession before the oral contract was made and that his possession was that of a co-tenant in common with Eugene. But Eugene admitted that he worked a part of the land on shares, giving William one-half of the product, and that William made no accounting to him for that which he worked. He

also admitted that the improvements made oy plaintiff were substantial and added somewhat materially to the value of the property. We find the proofs as to part performance ample to relieve from the effects of the statute under the rule applicable thereto.

The decree rendered is affirmed, with costs to plaintiff.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.