ROSKAY v. NILES CREAMERY CO.

1. CANCELLATION OF INSTRUMENTS—ASSIGNMENT OF STOCK—FRAUD
—ADEQUACY OF CONSIDERATION.

In plaintiffs' suit to set aside an assignment of his $3,000 pre-
ferred stock interest under recapitalization of corporation and
$3,000 note of purchaser of plaintiffs' original half interest
in entire stock, made to defendant stockholder, originally
owner of other half interest, while latter was engaged in suit
to set aside an assignment of his interest, and while corpora-
tion was in financial distress, and used by him in negotiating
settlement of other suit, question of adequacy of $1 considera-
tion must be determined in light of nature of relief requested,
i. e., either that defendant stockholder pay reasonable, proper
and just compensation for rights assigned, fraud being ex-
pressly disclaimed, or that accounting be made by him, the
corporation and defendant maker of the note.

2. SAME—REMARKS OF A JUDGE—EQUITY.

In suit to set aside an assignment of interest in recapitalized
corporation and a note given by purchaser of plaintiffs' half
interest in original stock against owner of other half of origi-
nal stock, remarks of the trial judge in another suit between
such defendant and assignees of his original interest that in-
terest of plaintiffs herein, which was not then in issue, would
have to be taken care of and that plaintiffs herein would have
a remedy against purchasers of their stock held, insufficient
basis upon which to found charge that payment of $1 was an
inadequate consideration in absence of charge or proof of
fraud, where corporation was then in financial distress.

3. SAME—FRAUD—ADEQUACY OF CONSIDERATION.

Plaintiffs in suit to set aside an assignment of their $3,000 pre-
ferred stock in recapitalized corporation and $3,000 note given
by purchaser of plaintiffs' half interest in original stock of
corporation held, not entitled to decree for $3,000 against
defendant, who had paid $1 for such assignment, in the ab-

sence of claim or proof of fraud on part of assignee, where plaintiffs' interest at time of executing assignment was then honestly believed by defendant to have been of no value.

Appeal from Berrien; Evans (Fremont), J. Submitted October 12, 1937. (Docket No. 109, Calendar No. 39,440.) Decided December 15, 1937.

Bill by Charles Roskay and wife against Niles Creamery Company, a corporation, and others to set aside an assignment, for an accounting and other relief. Decree for plaintiffs. Defendants appeal. Reversed and bill dismissed.

*Burns & Hadsell,* for plaintiffs.

*Gore, Harvey & Fisher* and *Stuart B. White,* for defendants.

BUSHNELL, J.   In 1929 the capital structure of the Niles Creamery Company consisted of 55 shares of common stock having a par value of $100 each, 27½ shares of which were owned by plaintiff Charles Roskay, and the other 27½ by defendant William Saathoff. One share of the holdings of Roskay was in the name of his wife.

On July 29, 1929, Roskay gave defendant Albert G. Rooks an option to purchase his holdings for $3,000 cash and $3,000 of seven per cent. preferred stock, which was to be issued later pursuant to a proposed recapitalization of the company, agreeing "to accept said A. G. Rooks' personal note (for $3,000) secured by all my stock purchased, until such time as said preferred stock may be authorized and issued."

On or about the same date, Saathoff gave Rooks and Glen Overton an option to buy his interest in the

business for $5,000 in seven per cent. preferred and $1,000 in common stock of the Niles Creamery Company, of the new issue.

Rooks exercised the Roskay option on September 3, 1929, paying $3,000 in cash, and giving his 90-day note, "subject to the terms and conditions" of the option agreement. On December 8, 1930, Rooks and Overton, without notifying either Roskay or Saathoff, increased the capitalization of the corporation to $35,000, to consist of $25,000 common and $10,000 preferred. Some time thereafter 30 shares of this preferred stock were issued to Roskay in purported payment of the Rooks note. Rooks testified that some time later he asked Roskay to surrender the note but Roskay never did this. However, there is no evidence that Rooks ever requested the surrender of Roskay's 27½ shares. Dividends totaling $420 were paid Roskay on the preferred stock prior to the commencement of the instant suit.

On or about December 11, 1930, Rooks and Overton delivered to Saathoff the shares promised to him, but the latter returned the stock to them about two weeks later.

On or about October 5, 1931, Saathoff commenced a suit against Rooks, Overton, Roskay and others, seeking cancellation of his contract with Rooks and Overton, who had, in the meantime, invested an additional amount of about $19,000 in the business. This suit was founded on the theory that the Saathoff-Rooks-Overton option contract was void for ambiguity in failing to specify the amount of preferred and common stock to be issued.

On October 16, 1931, Roskay pledged the 30 shares of preferred stock to a bank as security for a loan.

The Saathoff-Rooks case was brought on for trial on March 29, 1932, before Judge White, circuit judge for the county of Berrien. During the course of this

trial the judge declared that he hoped the parties would "get together" because "it looks like any remedy the court could grant, would be unsatisfactory to both sides." Judge White stated that if the contract were cancelled, Saathoff would have to reimburse Rooks and Overton for the expenditures which they had made or the assets of the corporation would have to be sold to pay them and other creditors, and anything that remained would go to Saathoff and Roskay, the stockholders. Judge White further stated that "Mr. Roskay would have to be cared for," but he thought that "he has a remedy against the gentlemen who bought his stock."

It is not clear whether the trial judge made the above remarks before or after the execution of the assignment hereinafter discussed. It appears, however, that Rooks, Saathoff and Stuart B. White, Saathoff's attorney, were all present in the court when the remarks were made.

During a noon recess in the trial of the Saathoff-Rooks case, White, Saathoff's attorney, told Rooks that he (White) believed that the court would cancel the Saathoff-Rooks contract because of its ambiguous character and order a sale of the assets of the creamery. Even if Rooks and Overton could have been reimbursed by Saathoff, the effect of cancellation would be to leave the corporation with two different capital structures, since 27½ of the original shares would have to be returned to Saathoff as his interest and the 30 shares of the new preferred could be retained by Roskay as his interest inasmuch as he had not elected to rescind his contract with Rooks. White asked Roskay to assign all his rights and interest in the creamery to Saathoff, including the Rooks note, the 30 shares of new preferred and the 27½ shares of the original common to enable Saathoff to settle with Rooks and Overton.

estate from which the stock held jointly was omitted, and by her own statement in her agency agreement with the Grand Rapids Trust Company. Each of these acts was definite and voluntary and amounted, in law, to an acquiescence in and a ratification of her ownership of the stock. See *Williams* v. *Vreeland,* 250 U. S. 295 (39 Sup. Ct. 438, 3 A. L. R. 1038).

In *Fors* v. *Thoman,* 267 Mich. 148, Mrs. Thoman had no knowledge that her name had been placed with that of her husband on some reissued bank stock and paid no consideration therefor. However, because she indorsed a dividend check payable to herself and husband and, in his absence, deposited the check in their joint bank account, this court held, under the authority of *Keyser* v. *Hitz,* 133 U. S. 138 (10 Sup. Ct. 290), and other authorities therein cited, that she was estopped to deny her statutory liability, and said:

"Although in a limited sense there is an element of contract when one becomes a stockholder, the liability for an assessment is based on the provisions of the statute.* "

This statement was followed in *Re Burger's Estate,* 276 Mich. 485, 501.

The test is not what others did with respect to the stock but what Mrs. Smith did herself. That Mr. Daane voted stock in the name of the William Alden Smith estate without objection is of no consequence. Nor is it material that Mrs. Smith did not actually succeed in voting the stock. When she signed the ballot in her attempt to vote it she exercised a right of ownership. *Williams* v. *Vreeland, supra.*

"Approval, ratification and acquiescence all presuppose the existence of some actual knowledge of

---

* See 3 Comp. Laws 1929, § 11945.—Reporter.

was grossly inadequate and that the whole transaction was unconscionable. He asks' that the assignment be set aside and defendants be required to account or that defendant Saathoff be required to pay reasonable, proper and just compensation for the rights assigned. The bill also includes a general prayer for relief. Plaintiffs' claim is that the preferred stock issued by Rooks in payment of the latter's note was illegal because of failure to call a stockholders' meeting to authorize its issuance; that therefore the note was unpaid at the time of the assignment and worth $3,000. Plaintiff also contends that the transaction was made even more inequitable because of the representations of White that the assigned rights were of no value.

The trial judge refused to cancel the assignment, believing that, if he did so, the only relief that could be afforded Roskay would be restoration to him of the entire interest in the note and contract with Rooks, both of which he said were outlawed at the time. The trial court, therefore, ordered Saathoff to pay Roskay $3,000 on condition that the latter transfer to Saathoff the note and all the stock he had in the creamery.

No question is raised in this appeal as to the power of the trial court to grant the relief provided for in the decree. Appellant claims that the consideration for the assignment was adequate, since Roskay's rights were indeed valueless at the time; that, in any event, Roskay is guilty of laches and comes into court with unclean hands.

The solution of this matter is thus rendered more difficult by the limited character of appellants' grounds of appeal.

This court has defined the term "gross inadequacy of consideration," but only in those cases where the relief given was rescission of the con-

tract at the suit of the party who obtained an inadequate consideration from his bargain, or a denial of the specific performance that was sought by the other. See *Albright* v. *Stockhill*, 208 Mich. 468; *Van Norsdall* v. *Smith*, 141 Mich. 355; *Engle* v. *Engle*, 209 Mich. 275. But it seems illogical to say that, because of a gross inadequacy of consideration, defendant Saathoff may be required to pay what, in the trial court's opinion, constitutes adequate consideration, unless he was guilty of actual or constructive fraud, in which case "adequate considerations" might, in effect, be given in equity by way of damages for that fraud. See *Gray* v. *Trick*, 243 Mich. 388. In the instant case, however, plaintiff expressly disclaimed any reliance on a fraud theory.

Notwithstanding the fact that the question of the trial court's power has not been expressly raised, the question of whether or not consideration is inadequate must be determined in the light of the nature of the relief requested.

The unsoundness of the theory contended for by appellee may be well illustrated by the following. It would hardly be denied that $2,500 in cash would be ample consideration for a $3,000 note and that a court of equity may not decree payment of the additional $500. Yet, merely because the consideration in the instant case was only $1, the court was asked to award plaintiff the full claimed face value of the note, $3,000.

The case of *Amster* v. *Stratton*, 259 Mich. 683, cited by plaintiff in support of the trial court's conclusion, is not in point. In that case a vendor sued in equity to foreclose a land contract which the purchaser claimed was procured by the vendor's fraud in representing that he (the vendor) had paid

$6,500 for the property, whereas in fact he had paid only $4,600, a difference of $1,900. The decree of the trial judge, granting the foreclosure but reducing the amount of the deficiency judgment by the $1,900, plus $500 for improvements made upon the premises by the purchaser, was affirmed. The $1,900 item was upheld as an equitable deduction from plaintiff's judgment because of his fraud; and the $500 was upheld merely as a rough adjustment of the extremely confused state of the accounts between the parties.

The trial court in the instant case, notwithstanding plaintiff's disclaimer of reliance upon fraudulent acts, was of the opinion that, in addition to the gross inadequacy of consideration, defendant was guilty of certain inequitable conduct tantamount to ''constructive'' or ''legal'' fraud. Plaintiff also urges this argument in his brief. The inequitable conduct complained of appears to have consisted of the foregoing representations by defendant's agent, White, to Roskay, that his (Roskay's) rights were of no value to the latter, and the retention by defendant of the ''benefit'' of the assignment after learning of the falsity of the representation through the remarks of Judge White to the effect that Roskay still had some remedy. This amounts, in reality, to a charge of fraud, but it is of no consequence since plaintiff denied that such representations were made. The decision cannot rest upon this ground as there is no proof that Roskay relied upon any fraudulent representations.

Plaintiff's claim may be reduced to his contention that the note was worth $3,000 at the time of the assignment and he presently expected to get more for it eventually than the recited consideration of $1. There is no showing of any inequitable conduct

on the part of defendants which plaintiff may rely upon in support of his contention. Whatever representations may have been made by White to Roskay before the assignment was consummated, all of the testimony justifies the conclusion that White honestly believed, and continues to do so, that Roskay's rights were valueless in that the note was paid and the corporation was in such financial distress as to render the stockholders' equity practically worthless in the event of a forced liquidation. The trial judge's statement that Judge White's remarks in the Saathoff-Rooks case should have made defendants realize that the assigned rights were valuable and that it was unconscionable not to return them is too weak a foundation upon which to erect a charge of inequitable conduct. Judge White's remarks not only failed to indicate whether Roskay's rights were of any value, but they were made in regard to a matter which was not at all in issue in the case before him.

Plaintiff makes much of the argument that defendant Saathoff had the actual benefit of his assigned rights during the period after the assignment and, therefore, should be held liable for the "reasonable value" of the note and stock. This proposition presumably rests on an analogy to *quasi*-contractual recovery on a theory of waiver of tort. The trial court expressly stated that defendant must be held to have "impliedly contracted" to pay the reasonable value of Roskay's rights. The difficulty with the application of this theory in the instant case is that the appropriation, if any, by defendant of plaintiff's rights has not, in any sense of the word, been wrongful.

The practical difficulty in this case arises out of the trial court's position that the assigned note

and contract have been outlawed and that rescission of the assignment, although it might possibly be warranted under the facts presented, would be of little actual value to plaintiff. This factor, however, does not improve plaintiff's equitable position and should not influence the adoption of the theory propounded by him. Defendant's failure to enforce the note within the statutory period is not ascribable to any fault on his part but to a belief, probably still held and possibly correct for all that is determined herein, that the note has been paid.

We conclude, therefore, that, however inadequate the consideration, it does not justify the relief granted by the trial court under the facts presented in this record and its decision must therefore be reversed. In view of this conclusion, it is not necessary to determine whether plaintiff is guilty of laches and comes into this court with unclean hands.

The decree of the trial court is vacated and one may be entered here dismissing plaintiff's bill of complaint, with costs to appellants.

FEAD, C. J., and NORTH, BUTZEL, SHARPE, POTTER, and CHANDLER, JJ., concurred with BUSHNELL, J.

WIEST, J. (*concurring*). When the trial judge found there was no fraud or misrepresentation inducing plaintiff, Charles Roskay, to execute the assignment, the bill should have been dismissed. Under such finding the court could not award plaintiffs increased consideration for the assignment.

Therefore, I concur in the reversal.

FEAD, C. J., and NORTH, BUTZEL, SHARPE, POTTER, and CHANDLER, JJ., concurred with WIEST, J.