WEBB v. LEVENE.

1. SALES—ESTOPPEL—ORAL NOTICE OF SALE OF BUSINESS—QUESTION FOR TRIER OF FACTS—EVIDENCE.

In nonjury action by seller of coal against corporate owner and former owner of laundry who had conducted the business under an assumed name similar to that of the corporation, organized after the sale, for balance due on account, the question of whether or not plaintiff had been given oral notice of the sale to the corporation was a question of fact and finding for plaintiff thereupon by trial court is accepted where there is competent evidence to sustain it (2 Comp. Laws 1929, § 9825 et seq., as last amended by Act No. 104, Pub. Acts 1939).

2. APPEAL AND ERROR—NONJURY CASES—QUESTIONS FOR TRIER OF FACTS—EVIDENCE.

The Supreme Court does not substitute its judgment on questions of fact for that of the trial court in nonjury actions at law unless the evidence clearly preponderates in the opposite direction.

3. PARTNERSHIP—RETIREMENT OF A PARTNER—NOTICE.

A retiring partner has an affirmative duty of notifying all persons with whom the firm has had dealings of his retirement from the partnership in order to absolve himself from liability for credit subsequently extended.

4. NAMES—RETIREMENT OF PERSON FROM A FIRM—NOTICE.

Where a firm name remains unchanged after the retirement of a person therefrom, the burden is upon such person to give notice of the retirement to all who have had dealings with the firm in order to absolve himself from liability for credit subsequently extended the firm.

5. ESTOPPEL—PARTIES—APPARENT OWNERSHIP.

A person who permits another, who is in fact the owner and operator of a business, to conduct such business in such a way as to create the appearance of ownership in the first

party may be estopped to deny such relationship to or connection with the business as will cause him to be liable for breach of contract to a third party whose dealings with the business were based upon the first party's apparent ownership thereof.

6. SAME—LAUNDRY—NOTICE OF CHANGE IN OWNERSHIP—NAMES.

Appellant who operated a laundry under an assumed name and bought coal from plaintiff is estopped from denying liability for coal purchased after assets of the business became property of defendant corporation with the same or a similar name as long as credit was extended to him as owner where he failed to notify plaintiff of any change in personnel of the ownership of the laundry (2 Comp. Laws 1929, § 9825 et seq., as amended by Act No. 104, Pub. Acts 1939).

Appeal from Kalamazoo; Weimer (George V.), J. Submitted April 6, 1944. (Docket No. 41, Calendar No. 42,633.) Decided May 17, 1944.

Assumpsit by Hugh S. Webb and Blanche Webb, doing business. as Webb Coal Company, against Andrew H. Levene, doing business as Ideal Laundry Company, and another. Judgment for plaintiff against defendant Levene. Defendant appeals. Affirmed,

*Mason & Stratton,* for plaintiff.

*Joseph S. Folz,* for defendant.

SHARPE, J. This is a law action on an account for coal sold and delivered to defendant Andrew H. Levene, doing business as "Ideal Laundry Company." It appears that prior to 1942 defendant Andrew H. Levene was operating three hotels in Kalamazoo and purchased coal for these hotels from plaintiffs. Separate bills were rendered for each of the hotels and the bills were generally paid monthly as per invoice. One of the hotels was known as the "Midway Hotel." In May, 1942, defendant

Levene opened a laundry in the building in which the Midway Hotel was located. On May 29, 1942, he filed in the office of the clerk of Kalamazoo county an assumed name certificate, to the effect that he was operating the laundry under the name "Ideal Launderers and Cleaners." The laundry occupied quarters separate and apart from the hotel and had a separate coal bin and coal chute. After the establishment of the laundry defendant purchased coal from plaintiffs for the laundry. Until September 4, 1942, coal furnished the laundry was billed as part of the Midway Hotel account, but after that date plaintiffs kept a separate record of coal delivered to the laundry, which account was kept in the name of "Ideal Laundry Company."

On November 21, 1942, defendant Andrew H. Levene sold and delivered possession of the laundry assets to Royce Y. Pitchuer and James L. Simmons. After that date the laundry was operated by Pitchuer and Simmons until completion of incorporation of a company they had agreed to form. Articles of incorporation were executed on December 10, 1942. The certificate of incorporation was issued on December 14, 1942, and filed in the office of the Kalamazoo county clerk on December 16, 1942. A chattel mortgage from the purchasers to defendant Levene was executed on December 9, 1942. Some time after the laundry had been sold, defendant Levene, by registered mail, notified all of his laundry creditors of the sale, except plaintiffs, and as to plaintiffs the claim is made that one Shaw, plaintiffs' manager, was so notified by a personal conversation over the telephone.

After November 21, 1942, plaintiffs continued to deliver coal at the laundry premises. Bills for the coal were sent to Ideal Laundry, but none of these bills was paid, and are in issue in the present con-

troversy. When the corporation was formed, under the name "Ideal Launderers and Cleaners, Incorporated," defendant Levene was made vice-president and a member of the board of directors, but took no active part in the management of the corporation's business. A dissolution notice of doing business under an assumed name was filed December 31, 1942, by Ideal Laundry Company. The manager of plaintiffs' company stated that he was not informed of the change of ownership until sometime in March, 1943.

Plaintiffs' declaration states a claim for coal delivered between September 4, 1942, and March 17, 1943, inclusive, in the sum of $624.48. Defendant Levene filed an answer to the declaration, claiming that he paid for all coal furnished between the dates of September 4, 1942, and November 18, 1942, and that after the date of November 18, 1942, he did not authorize plaintiffs to sell or deliver coal to the Ideal Laundry Company. The trial court entered a judgment in favor of plaintiffs in the sum of $624.48, and in an opinion stated:

"Defendant's denial of liability is necessarily based upon an affirmative defense. He caused deliveries of coal to be charged to him personally, doing business under an assumed name. He is liable for all deliveries so made until such time as he established by a preponderance of the evidence that he notified plaintiff not to charge further deliveries to his account.

"I am not satisfied by a preponderance of the evidence that defendant definitely or sufficiently advised plaintiff, or his duly authorized agent, to desist from charging subsequent deliveries of coal to his account so as to relieve him of liability therefor. I realize there is a conflict in the testimony, but on the whole record it appears that defendant has not met the burden of proof."

Defendant Levene appeals and urges that he did in fact notify plaintiffs on or about December 1, 1942, that he had sold the laundry prior to that date; that as a matter of law he was under no duty to notify plaintiffs of the sale of his laundry; and that recovery should be limited to $10.56, representing the unpaid balance for coal delivered to and including November 18, 1942.

It is the claim of plaintiffs that they were entitled to actual notice of the change in ownership at the time said defendant sold his business, and that plaintiffs had a right to be apprised of the fact that they would have to look to others for payment of coal delivered.

There is no claim made that the filing of the dissolution under the assumed-name statute * on December 31, 1942, or the filing of the articles of incorporation on December 16, 1942, constituted notice to plaintiffs of a change in ownership. Defendant Levene urges that on or about December 1, 1942, he had a telephone conversation with Donald B. Shaw, manager of plaintiff company, notifying Shaw that he wanted a statement of his account as he had sold the business as of November 21, 1942. Mr. Shaw testified that the first knowledge he had that said defendant was no longer connected with the laundry was sometime in March, 1943.

In view of the testimony in this case the matter of oral notice becomes a question of fact. There is competent evidence to sustain the finding of the trial court. In such cases we do not substitute our judgment on questions of fact unless the evidence clearly preponderates in the opposite direction. See

---

* 2 Comp. Laws 1929, § 9825 *et seq.*, as amended by Acts Nos. 272, 274, Pub. Acts 1931, and Act No. 104, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 9825 *et seq.*, Stat. Ann. and Stat. Ann. 1943 Cum. Supp. § 19.821 *et seq.*).—REPORTER.

*Leonard* v. *Hey,* 269 Mich. 491 (37 N. C. C. A. 111). We therefore accept the finding of fact by the trial court upon this issue.

The remaining question of whether defendant had a duty to notify plaintiffs of the sale of his laundry in order to absolve himself from any liability for coal furnished is a legal question. In partnership cases a retiring partner has an affirmative duty of notifying creditors of his retirement from the partnership.

In *Stebbins* v. *Walker,* 46 Mich. 5, plaintiff was a dealer in grain, and defendants were commission brokers. As such brokers they had bought and sold for plaintiff previous to June 30, 1879. On August 14, 1879, plaintiff made a conditional sale of his business to his brother, Osmyn G. Stebbins. The conditions of this sale were not performed by the brother, and at the end of a week plaintiff resumed his business and took possession of his property. On August 14, 1879, plaintiff, by letter, notified defendant that he was retiring from business, but that the business would be conducted by his brother. From August 14 to November 5, 1879, defendant had been dealing with the said Osmyn G. Stebbins in the belief that he was the principal in the business. When Osmyn G. Stebbins left the employment of his brother no notice was given to defendants, and to all appearances the business was conducted as before. On November 26, 1879, defendant learned for the first time that plaintiff had resumed business and that all the wheat dealings previous to November 15th had been conducted by Osmyn G. Stebbins as agent and not as principal. As a result of these dealings Osmyn G. Stebbins became indebted to defendants. Defendants attempted to apply certain credits due plaintiff as part payment on a loan of

$700 to Osmyn G. Stebbins. The trial court applied the credits against the loan. On appeal the court said:

"The same person who had sent wheat to them, and who they supposed and had a right to suppose was the principal, requested of them an advance, and they made it. * * *

"The case in judgment is a plain case of estoppel. There has been negligence from which one of two parties must suffer, and the responsibility for this negligence justly and exclusively lies at the door of the plaintiff. If he were now to collect of defendants the sum they advanced to his brother while he was acting ostensibly as principal, they would be defrauded, and the plaintiff's negligence would have furnished the opportunity, and the agent. The loss must therefore fall upon the plaintiff, though his intentions may have been entirely honest. * * *

"The defendants were therefore at liberty to stand upon their rights as they existed at the time they first learned that the business carried on with them by Osmyn in the name of O. G. Stebbins was really the business of the plaintiff."

The same principle is involved in *Westinghouse Electric & Manfg. Co.* v. *Hubert,* 175 Mich. 568 (Ann. Cas. 1915A, 1099). We there quoted with approval from *Neal* v. *M. E. Smith & Co.,* 54 C. C. A. 226 (116 Fed. 20):

"When a person retires from a firm with which he has been connected, it is his duty to advise all persons with whom the firm has previously had dealings that he has so withdrawn, if he would absolve himself from liability for credit subsequently extended by such persons to the firm from which he has retired. The law casts this burden on the retiring member; and, where the firm name remains unchanged, it does not compel those who have previously dealt with it to ascertain, each time that

credit is extended, whether the membership thereof remains the same as before. In the absence of a notice to the contrary, they may assume that it does. This doctrine is elementary."

In 46 Am. Jur. p. 232, it is said:

"A person who permits another, who is in fact the owner and operator of a business, to conduct such business in such a way as to create the appearance of ownership in the first party may be estopped to deny such relationship to or connection with the business as will cause him to be liable for breach of contract to a third party whose dealings with the business were based upon the first party's apparent ownership thereof. Thus, the owner of a department store has been held liable for the price of goods sold to the lessee or licensee of a department in such store."

In the *Stebbins Case, supra,* credit was advanced on the past business relations and under the belief that Osmyn G. Stebbins was the principal. In the case at bar plaintiffs advanced credit to the laundry in the belief that defendant Levene was the owner. Plaintiffs relied upon past business relations with said defendant in continuing to give him credit. Said defendant had a duty to notify plaintiffs of any change in the personnel of the ownership of the laundry if he would absolve himself from liability. He is now estopped from denying liability on the credit extended to himself as owner of the laundry.

The judgment of the trial court is affirmed, with costs to plaintiffs.

NORTH, C. J., and STARR, WIEST, BUTZEL, BUSHNELL, BOYLES, and REID, JJ., concurred.