FRYE *v.* METROPOULOS.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—STATEMENT OF
   QUESTIONS INVOLVED—BRIEFS—MATTERS EQUALLY WITHIN KNOWL-
   EDGE OF DECEASED.
   
   Question as to admissibility of testimony of defendant and his
   attorney as to matters equally within the knowledge of plain-
   tiff's intestate is not discussed notwithstanding question was
   in statement of questions involved in plaintiff's brief but is
   not discussed therein and plaintiff failed to sustain his burden
   of proof of facts essential to recovery (3 Comp. Laws 1929,
   § 14219).

2. CHATTEL MORTGAGES—DEATH OF MORTGAGOR—FORECLOSURE—DIS-
POSITION OF PROCEEDS—BURDEN OF PROOF—EVIDENCE.
   In administrator's nonjury action against defendant who had
     foreclosed chattel mortgage on restaurant property for dif-
     ference between amount of bid and indebtedness, burden of
     proof of showing that agreement whereby defendant acquired
     an interest in the mortgage was for such an inadequate con-
     sideration as to render the agreement unconscionable and that
     a later assignment by deceased, absolute in form, was given
     as additional security *held*, not sustained.

3. APPEAL AND ERROR—NONJURY CASES—QUESTIONS FOR TRIER OF
FACTS—EVIDENCE.
   The Supreme Court does not substitute its judgment on questions
     of fact for that of the trial court in nonjury actions at law
     unless the evidence clearly preponderates in the opposite direc-
     tion.

Appeal from Wayne; Marschner (Adolph F.), J.
Submitted October 3, 1944. (Docket No. 21, Cal-
endar No. 42,730.) Decided November 30, 1944.

Action by Floyd A. Frye, administrator of the
estate of Apostolos Karaganis, also known as
Apostolos Karys, deceased, against George Metro-
poulos for the amount of bid on chattel mortgage
sale in excess of indebtedness. Judgment for de-
fendant. Plaintiff appeals. Affirmed.

*Paul Bairas,* for plaintiff.

*Heal, Deeley & Lo Cicero,* for defendant.

BUTZEL, J. Apostolos Karaganis, also known as
Apostolos Karys, and referred to herein as Karys,
was the principal stockholder in Beau Arts Restau-
rant, Inc., a Michigan corporation, which operated a
restaurant in Detroit, Michigan. Its fixtures, equip-
ment, et cetera, represent an investment of at least
$20,000. Karys also held a note of the corporation

for $8,600 which was secured by a chattel mortgage on the personal property of the restaurant. On November 12, 1938, he bought out the minority stockholders in the corporation and in payment gave three notes totalling $1,750, payable to Paul Bairas, trustee. He also executed an escrow agreement to a trust company as agent, depositing with it, in order to secure the notes, the stock and the chattel mortgage and note for $8,600. After paying off $600, Karys defaulted in payment of $1,150 and thus was in danger of losing the restaurant through sale of the collateral held by the trust company if demanded by Mr. Bairas, the agent for the minority stockholders. Karys was advanced in years and had no family in this country, his only near relative being a sister in Greece. He was, however, on extremely intimate terms with George Metropoulos, the defendant herein, who advanced to Karys the sum of $1,172.55. Karys was godfather of defendant's children. To secure defendant for the sum he advanced to pay off Bairas and to secure the release of the collateral from the escrow agent, Karys entered into a new agreement under date of March 31, 1939, with defendant as party of the second part. The agreement sets forth the loan and the depositing with the new escrow agent certificates representing 1,410 shares of the Beau Arts Restaurant, Inc., and an assignment of the chattel mortgage on the restaurant securing the sum of $8,650'' and also the note secured by the chattel mortgage. The agreement provided for the delivery of this collateral to defendant in the event the notes were not paid in accordance with their terms. Karys continued to run the restaurant. He reduced the indebtedness to defendant to $700 or $800. Notwithstanding the fact that defendant was entitled to the assignment of the chattel mortgage by virtue of the escrow agreement

of March 31, 1939, in the event of the nonpayment of the notes, Karys gave an assignment of the chattel mortgage and note to defendant for a consideration of one dollar on January 8, 1940. Plaintiff claims that the restaurant was worth in the neighborhood of $25,000.

Karys committed suicide on February 27, 1940. Defendant looked after the funeral arrangements and the burial of Karys and shortly after the funeral he filed a petition for administration in the probate court of the county of Wayne, State of Michigan, in which he stated that the only heir-at-law of deceased was a sister in Greece, that Karys left a personal estate of the value of $500, or thereabouts, and that deceased was engaged in the hotel and restaurant business, that in order to protect the interest of his estate, defendant asked that a special administrator be appointed. Special administration was not granted to petitioner but to another party. Defendant subsequently foreclosed the chattel mortgage and the restaurant was bid in by himself for either $7,000 or $7,500. There was some bidding at the sale conducted by a constable. There was some question as to the exact amount of the bid but, in view of our decision, we need not discuss the value of the property or the amount of the bid, except to say defendant at the time regarded the value at more than the amount of his bid.

There is testimony that at the time of his death Karys was also engaged in the hotel business. The record also shows that defendant prior to the sale and also immediately thereafter was obliged to pay certain amounts for taxes, rent, et cetera. Also prior to the sale, defendant purchased and took an assignment of the first and prior chattel mortgage given to the Gaylord Investment Company by the corporation and on which the sum of $549 was still

due. Plaintiff was subsequently appointed administrator of Karys' estate. He brought suit in assumpsit against defendant, claiming that defendant owed to Karys' estate the difference between the amount of the bid and the aggregate amount of the balance due on the notes held by him plus the sum that was due on the first mortgage to the Gaylord Investment Company and plus certain taxes, et cetera, paid by defendant. In plaintiff's brief he claims that if the bid was $7,000 instead of $7,500, after giving defendant credit for the balance due on the first mortgage, the amount due on the notes and other items, there still would be due plaintiff the sum of $5,034.15. If the bid was $7,500, the amount would be increased $500.

The case was heard by the trial judge without a jury. Plaintiff in his behalf claimed that in a petition for administration defendant alleged under oath that he was a creditor; that the deceased was in the restaurant as well as the hotel business, and the estate was valued at $500. An attorney who appears as the largest creditor of the Karys' estate drafted the petition for administration. He claims the defendant told him at the time that there was $800 due him. Defendant asked for administration as a creditor.

Attention is further called to the fact that in the petition for probate defendant stated that the deceased was engaged in the operation of a hotel and restaurant business, although defendant claims that Karys previous to his death had turned the restaurant over to him. It is possible that Karys could have run the restaurant for defendant. Another witness claimed that shortly after the funeral he approached defendant and asked him to pay him $120 due him as an employee and also sums due other employees, and told him that there was only

$1,232 due defendant, and that defendant stated that he would not pay anyone but that he was going to send any money that was left to the sister in Greece. The testimony is not too clear but the effect of it was that defendant told him he was going to get his money back and send the balance to the "sisters" in the old country. He also testified that defendant had told him that the balance due him was $700. It was further shown that after the assignment of the mortgage took place, Karys continued to run the restaurant up to the time of his death. Plaintiff further claims that there is no showing that defendant took any active part in the management until after the death of deceased, which occurred some seven weeks after the second assignment of the mortgage was executed.

On the other hand, defendant shows the absolute assignment of the mortgage on January 8, 1940, for a consideration of one dollar, and that at the same time he received the stock in the corporation held by Mr. Heal. Defendant very pertinently calls attention that there was no reason whatsoever for the making of an additional assignment as security, for under the escrow agréement with Mr. Heal the mortgage had been already assigned for the purpose of securing defendant. Defendant claims that the assignment of the mortgage and stock was given by him so that he would become the owner of the restaurant. Mr. Heal also testified that at the time of the second assignment he turned the certificates of stock over to defendant. The fact that Karys was left to run the restaurant would not be conclusive that he still owned the restaurant particularly in view of the fact that the friendship between the parties was a most intimate one. Defendant also produced two other witnesses in his behalf. The pastor of the Greek church testified that Karys had

told him that he had transferred the restaurant to defendant; also that he was operating it for defendant. Another witness stated that he met Karys and defendant in the month of January, 1940, and Karys told him that he had just come from an attorney and that he had turned the restaurant over to defendant. Defendant further claimed that he signed the petition for administration as a creditor because he had obligated himself to pay the funeral expenses.

Mr. Heal, who is the escrow agent, was also attorney for defendant. He testified that Karys told him that he wanted to transfer the entire restaurant to defendant at the time the assignment of the mortgage was executed and the stock turned over to defendant. Objection was made to his testimony on the ground that it was equally within the knowledge of deceased.* The court stated that certain testimony of Mr. Heal, as attorney for defendant, was within the prohibition of the statute. The judge in his opinion did refer to Heal's testimony but did not base his decision upon it. He did refer to the friendly relations between the parties and the reason why Heal did not at once return the notes to Karys. If Heal's testimony is stricken in its entirety and defendant's testimony disregarded, there would still be a reason why Karys ran the restaurant up until the time of his death, as without the transfer of the stock, and prior to the foreclosure of the mortgage, defendant would not be the owner of the corporation that ran the restaurant. The question of the admissibility of Heal's testimony is raised in the statement of the questions involved in plaintiff's brief but it is not discussed, and, therefore, we need not discuss it, for we find that without considering such testimony plaintiff did not sustain the burden of

* See 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914).—RE-
PORTER.

proof of showing such an inadequate consideration as to render the agreement unconscionable or that the second assignment was given as additional security. The second assignment of the mortgage for one dollar appears to be absolute in form. The testimony is very conflicting. After a very careful reading of the record, and considering the second assignment and the testimony of defendant and particularly the two disinterested witnesses who testified to what Karys had told them, and taking into consideration the further fact that the judge saw and heard the witnesses, we cannot say that he came to a wrong conclusion in holding that

"Plaintiff has not sustained the burden of proving such inadequate consideration as to render the agreement unconscionable nor that the second assignment was given as a 'conditional assignment.'"

See *Roskay* v. *Niles Creamery Co.*, 282 Mich. 578; *Mason* v. *Mason*, 296 Mich. 622; *Hill* v. *Hairston*, 299 Mich. 672. No undue influence, fraud or duress was claimed or shown. We do not substitute our judgment on questions of fact in an action at law tried by a judge without a jury unless the evidence clearly preponderates in the opposite direction. *Webb* v. *Levene*, 309 Mich. 38.

Judgment is affirmed, with costs to defendant.

NORTH, C. J., and STARR, WIEST, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.